JOSEPH A. L. BLEK, Plaintiff, *v.* FRANK WILSON and Others, Defendants.

Supreme Court, New York County, June 14, 1932.

*Maximilian L. Blek*, for the plaintiff.

*Walsh & Stern* [*Harold Stern* of counsel], for the defendants.

COTILLO, J. The International Brotherhood of Electrical Workers is an organization with jurisdiction over all the electrical workers in the United States and its possessions and also in the Dominion of Canada. It consists of a number of local unions acknowledging its jurisdiction and subject to its laws and rules, and having as one of its chief objects the organization of all the electrical workers in the local unions. Local Union No. 3 is a chartered local union of the international brotherhood and has jurisdiction over all the electrical workers in Greater New York and Long Island. The individual defendants, Frank Wilson and William Beck, are the president and treasurer of Local Union No. 3. In 1924 the plaintiff was admitted to membership in Local Union No. 83 of the International Brotherhood of Electrical Workers, located in Los Angeles, and in 1926, having been in good standing in Local Union No. 83, he obtained a traveling card from that local, which he deposited with Local Union No. 3, and there was issued to him by the latter a working card for the then current quarter. Plaintiff remained in good standing up to and including December 31, 1929. On or about April 4, 1930, he was informed that the executive board of Local Union No. 3 had taken action on the complaint made against him, and found him guilty and imposed the penalty of an indefinite suspension and a fine of $200. The plaintiff's grievance is that this suspension and fine were in violation of the constitution of the international brotherhood, inasmuch as he had never received a copy of any alleged charges or specifications. He further complains that no charges or purported charges in writing specifying the article and section of the constitution or by-laws of Local No. 3 were ever made against the plaintiff and signed by a member of said local; that he never had an opportunity to answer or defend any purported charges allegedly preferred against him; and that the assessments and suspension are unlawful and void; and contrary to the provisions of the by-laws governing the members of Local Union No. 3 and the international brotherhood. Accordingly, he prays that this court decree that the assessment of the plaintiff in

the sum of $200 and his indefinite suspension were unlawful, void and of no effect, and that it be decreed that the plaintiff is a member in good standing of said Local Union No. 3 of the International Brotherhood of Electrical Workers, and entitled to all the rights and privileges as such, and that he recover of the defendant damages for the length of time that he has been unable to procure any work due to his suspension. Besides being a member of Local Union No. 3, plaintiff was also a member of Local Union No. 52 of the International Alliance of Theatrical Stage Employees and Moving Picture Operators of the United States and Canada. The ground of plaintiff's suspension from the union was that he performed work outside of the authorized scope of his duties as a union member in the taking of sound motion pictures of the induction of Ex-President Coolidge as a member of the board of directors of the New York Life Insurance Company, having been sent there to cover the story on behalf of the Pathe News, as one of a crew of three employees of that organization.

The plaintiff's contentions may be divided into four points: (1) This court has the power to review and correct the determination of defendant's executive board in spite of the plaintiff's failure to exhaust his remedies within the defendant organization and/or the International Brotherhood of Electrical Workers; (2) that the plaintiff at no time either expressly or by implication waived the rights guaranteed him by the Constitutions of the United States and the State of New York to be served with a written copy of any charges to be preferred against him and for an opportunity to be heard in his defense; (3) that the acts and conduct of the defendant and its executive board resulting in plaintiff's fine and suspension were unfair, unreasonable and arbitrary, and (4) that he should be reimbursed for the loss of wages occasioned by the conduct of the defendant and its executive board. The charges made against this plaintiff by the defendant were founded upon the claim that at the time he was working on the induction of Ex-President Coolidge, he had informed a certain McCron, a member of Local Union No. 3, that he (the plaintiff) was about to perform certain work which amounted to a violation of the rules of Local Union No. 3. The union contends that the trial was had in conformity with the constitution of the International Brotherhood of Electrical Workers, adopted at Miami, Fla., on September 9, 1929, which amended the August 15, 1927, constitution by suspending the requirements of section 1 of article 32, entitled " Charges and Trials," as set forth in section 8 thereof, to wit: " Any member who violates trade or working rules of the Local Union shall be tried by the Local Union

Executive Board, who may hear and determine the matter summarily or immediately."

There can be no doubt that any one joining an organization of this kind agrees to abide by all the rules and regulations laid down in the constitution and the by-laws of the organization, except that he cannot be said to agree to abide by any rule or regulation which is unfair, unreasonable and arbitrary, and which would tend to deprive him of rights guaranteed him by the Constitution. Although he has selected the tribunal to pass upon any acts of his which may be in conflict with the constitution of his organization, nevertheless, if this tribunal is so constituted or if the constitution of the organization itself is so unfair, unreasonable and arbitrary as to deprive him of a fair trial, he may then appeal to this court, even if he fails to exhaust the remedies accorded to him by the organization. (*Loubat* v. *Le Roy*, 40 Hun, 546.)

In the case at bar there is no question that copies of the charges against this plaintiff were never served upon him. Although section 8 seems to provide for summary trial a good deal along the lines of a drum-head court martial, it cannot be rigidly interpreted so as to override the vested rights of the plaintiff, and the court to further justice may search the record in order to see whether or not the rights of this plaintiff have been protected. The trial was had in his absence, and although this may not in all cases be an essential point, nevertheless in the present case I think it is. The plaintiff, upon discovering that a member of the organization was preferring charges against him, although no copy of these charges had been served upon him, appeared before the duly constituted board, and after waiting all evening was informed by the president of the board that they would have to adjourn the trial due to the failure of the complaining member to appear. · At this time he was not accorded the right to know what the charges consisted of that were being made against him. Without consulting him at all the trial was adjourned, and when the plaintiff, in order to pursue a livelihood, was compelled to leave the city after having notified the local on the day on which his trial had been set of his inability to appear because of circumstances over which he had no control, they nevertheless proceeded with the trial.

After a search of the record I fail to find that what plaintiff did on May 8, 1929, in the board of directors' room in the New York Life Building was any violation of any law or trade or working rule of either the defendant or the International Brotherhood of Engineers. Plaintiff testified that he took the interconnecting cable from his sound apparatus to his storage battery and connected the same. McCron testified that he saw plaintiff near the sound

apparatus and he did not personally see him do anything, and he so told defendant's executive board at the trial that was held on March 31, 1930. The findings of the executive board were, therefore, unsubstantiated.

While ordinarily the court will not pass upon the weight of evidence and substitute its judgment for that of plaintiff's fellow-members in the union, nevertheless, " if their determination of his guilt of the charge was totally unsustained by any substantial evidence, such determination should here be considered ' as contrary to natural justice,' and so subject here to review and correction. (*People ex rel. Johnson* v. *N. Y. Produce Exchange*, 149 N. Y. 401, 410, 413; *Young* v. *Eames*, 78 App. Div. 229, 241, 242; affd., 181 N. Y. 542.) " (*Fritz* v. *Knaub*, 57 Misc. 405, 411; affd., 124 App. Div. 915.) A suspension from a union such as the one to which the plaintiff belongs carries with it very serious consequences. It deprives him of his opportunity to make a livelihood in his selected occupation and of various financial benefits that accrue to a member of a union. In view of the seriousness of the penalty, section 8 should not be so interpreted as to deprive the plaintiff of notice and a copy of the charges. Not only was he deprived of his rights in that respect, but the evidence did not support the charges. I, therefore, hold the finding of the board to be void and that the plaintiff is entitled to reinstatement in Local Union No. 3 as of the date of his suspension and the restoration of all rights accruing to a member of a local, including the remittance of the fine imposed. I may observe that I am reluctant to interfere with the internal management of an organization which is presumably conducted for the betterment of labor conditions in the industry. It is not the severe penalty visited upon the plaintiff that actuates me in arriving at the determination, but the disregard of *natural justice* exhibited here. A labor union is a quasi public institution. Injustice to an individual member is apt to undermine confidence on the part of the other members as well as society at large, and tend to the destruction of the organization and the establishment of rival unions by leading to the belief that it is run for the benefit of the few at the expense of the rank and file. As to the demand for damages, the evidence on the probability of plaintiff obtaining employment during the period of his suspension is too speculative to warrant any award.

Judgment for the plaintiff. Findings of fact, conclusions of law and judgment signed.