**LOCAL 2608, LUMBER AND SAWMILL WORKERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS, AFL–CIO, Plaintiffs,**

**v.**

**MILLMEN'S LOCAL 1495, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS, AFL–CIO, Defendants.**

**Civ. No. 7823.**

United States District Court
N. D. California, N. D.

Dec. 31, 1958.

Halpin, Halpin & Leep, Redding, Cal., for plaintiff.

Herbert S. Johnson, San Francisco, Cal., for defendant.

HALBERT, District Judge.

Local 2608, Lumber and Sawmill Workers, United Brotherhood of Carpenters and Joiners, AFL-CIO (hereinafter referred to as plaintiff) brought this action against Millmen's Local 1495, United Brotherhood of Carpenters and Joiners, AFL-CIO (hereinafter referred to as defendant) asking me to settle a representational dispute. It is alleged that jurisdiction is vested in this Court by Title 29 U.S.C.A. § 185(a), Labor Management Relations Act of 1947, § 301(a).

Plaintiff having sought a preliminary injunction, defendant filed a motion to dismiss, alleging lack of jurisdiction of the subject matter. In view of the obvious need for immediate action, I gave priority to the proceeding, and the cause was heard, argued and submitted. In order to further expedite matters, a bare order was entered on November 13, 1958. In that order both the motion to dismiss and the request for a preliminary injunction were denied. This memorandum is in fulfillment of my promise that the order of November 13, 1958, would be supplemented by the reasoning behind the conclusions therein reached.

Both plaintiff and defendant had sought, and were actively seeking, the right to represent those employees at the Red Bluff plant of the Diamond Gardner Corporation, engaged in the production of wood products. In an effort to resolve the unseemly conflict between two com-

ponent parts of the same Brotherhood, the General President of the United Brotherhood held a hearing at which both parties were represented. While there is substantial disagreement as to the final determination, if any, made by the General President, for the purposes of this opinion it will be assumed that plaintiff was awarded the right to represent the workers at the Red Bluff plant.

Soon after this award was made, defendant intervened in the N.L.R.B. proceeding designed to select the desired representative of the employees at the Red Bluff plant. Defendant was thereupon placed on the certification election ballot; the election was duly held; and defendant received a majority of the votes cast.

While the N.L.R.B. had not, at the time of the hearing, taken the final step, namely, that of certifying defendant as the exclusive bargaining agent for the employees at the Red Bluff plant, it was admitted by both parties that final certification was but ministerial in nature and would be made in due course.

The essence of plaintiff's case is that both it and defendant are local trade unions operating under the constitution and laws of the United Brotherhood of Carpenters and Joiners, as amended December 1, 1957, wherein is the provision that "The General President shall decide all points of law, appeals and grievances, * * * and have power to suspend any Local Union." (§ 10 F). It was argued that the General President having decided in plaintiff's favor, defendant should not be allowed to act in opposition to his ruling. Plaintiff first urged me to require defendant to disclaim any interest in the pending proceeding before the N.L.R.B., and next urged me to enjoin defendant from entering into a collective bargaining agreement with the Diamond Gardner Corporation.

### Jurisdiction

Preliminarily, it should be noted, and it is so found, that both plaintiff and defendant are labor organizations within the meaning of Title 29 U.S.C.A. § 152 (5) for the purposes of this opinion (See: Burlesque Artists v. Variety Artists, D.C., 134 F.Supp. 203) and that the activities of both parties affect commerce within the meaning of the Labor Management Relations Act.

The extent of the jurisdictional grant embodied in Title 29 U.S.C.A. § 185(a), [Labor Management Relations Act, § 301 (a)] cannot be so easily determined. The essential ambiguity of that section discloses a bramblebush of problems when it is sought to be invoked in such a situation as exists here. When first confronted with § 185(a), six Justices of the Supreme Court of the United States required three separate opinions to explain their reasons for concluding that a labor union cannot sue on behalf of its member for accrued wages (Association of Westinghouse Salaried Employees v. Westinghouse Electric Co., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510).

As that opinion suggested that the result of a suit filed under § 185(a) might vary with the forum chosen, the Supreme Court heard another case involving that section (Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S. Ct. 912, 1 L.Ed.2d 972). There a clear majority of the Court held that Congress intended the Federal Courts to apply substantive Federal law, which they were to "fashion from the policy of our national labor laws," using "judicial inventiveness" as required. Factually, that case involved a collective bargaining contract. The decision, therefore, did not reach other types of contracts (such as the union constitution in issue here) between participants in the labor fields. Litigation in inferior courts has not established any consistent interpretation of § 185(a), some cases holding that jurisdiction is granted only with respect to collective bargaining agreements (Sun Shipbuilding & Dry-Dock Co. v. Industrial Union, D.C., 95 F.Supp. 50), while others find that the jurisdictional grant also includes that type of contract embodied in a union constitution (Burlesque Artists v. Variety Artists, supra).

While I have considerable reservations about the applicability of § 185(a) in the existing circumstance, posing as it does the conflict between employee freedom of choice (29 U.S.C.A. § 157), and what is no more than the parceling out of representational areas among the locals of a union, I feel bound by the decision of the Court of Appeals of the Seventh Circuit in United Textile Workers of America, AFL-CIO v. Textile Workers Union, 258 F.2d, 743. That case differs factually from the instant case only in that the instrument involved there was a "no raiding" agreement rather than a union constitution, and the Court of Appeals held that the District Court had jurisdiction by virtue of § 185(a). Though it was there admitted that the legislative history of § 185(a) was obscure, and of little help in a search for the answer to the question of whether Congress intended to give unions such a status that they could, in an inter-union dispute, sue and respond in a District Court, it was concluded that the line " * * * between any such labor organizations" embedded in § 185 manifested Congressional recognition of contracts between unions as being the subject of enforcement in Federal Courts.

I would be less than frank if I did not here admit that I would have reached a different conclusion, if the problem were mine alone to decide, but in view of the decision in United Textile Workers of America, AFL-CIO v. Textile Workers Union, supra, I feel constrained to hold, and I do hold, that I had jurisdiction to hear this matter.

## Preliminary Injunction

The decision of the Brotherhood's General President, that plaintiff should be the representative of the Red Bluff employees, was rendered through an agent on July 28, 1958. Immediately thereafter defendant, by its action in intervening in the representation proceeding then pending before the N.L.R.B., indicated that it would not accept that determination.

The constitution of the Brotherhood, in this respect, provides that:

"The General President shall decide all points of law * * * and * * * suspend any Local Union * * * for violation of the Constitution and Laws of the United Brotherhood * * *

"Any Local * * * which wilfully or directly violates the Constitution, Laws or principles of this United Brotherhood, or acts in antagonism to its welfare, can be suspended by the General President in conjunction with the General Vice-Presidents. (§ 10 F).

"Whenever, in the judgment of the General President, subordinate bodies. or the members thereof are working against the best interest of the United Brotherhood, or are not in harmony with the Constitution and Laws of the United Brotherhood, the General President shall have power to order said body to disband under penalty of suspension. (§ 10 K)."

From the above it may be seen that the General President of the Brotherhood wields absolute power insofar as control of local unions is concerned. Notwithstanding this fact, plaintiff delayed until September 17, 1958, before writing the one letter which has been addressed to the General President concerning the stand taken by defendant. Plaintiff received no response to that letter, and no action was taken by the Brotherhood.

Thereafter, in November, 1958, defendant having received a majority of the votes cast in the election conducted by the N.L.R.B., and certification being imminent, plaintiff asked this Court to exercise its equitable powers and restrain defendant from accepting certification as the bargaining agent for the Red Bluff employees.

Apart from the obvious question of laches raised by the above recital, it is clear that plaintiff has not made sufficient effort to obtain redress within the

framework of the Brotherhood. While plaintiff's explanation that it delayed coming into court in an effort to avoid "washing its linen" in public is plausible, no reason was given for its failure to do no more, under its constitution, than write a single letter to the General President. Under these circumstances, plaintiff was not entitled to an exercise of the extraordinary and discretionary power of this Court in the form of a preliminary injunction.

All that I said in my order of November 13, 1958, is here and now affirmed. Jurisdiction was, and is, accepted. A preliminary injunction was, and is, denied.