INTERNATIONAL UNION OF DOLL & TOY WORKERS OF UNITED STATES AND CANADA, AFL-CIO, and its Local Union, Processors & Fabricators Union, Local 802, AFL-CIO, Plaintiffs,

v.

METAL POLISHERS, BUFFERS, PLATERS & HELPERS INTERNATIONAL UNION, AFL-CIO, and its Local Union, Metal Polishers, Buffers, Platers & Helpers International Union, AFL-CIO, Local 67;

and

Ralph E. Kennedy, as Regional Director for Twenty-First Region, National Labor Relations Board, Defendants.

Civ. No. 517-59.

United States District Court
S. D. California,
Central Division.

Jan. 18, 1960.

Gilbert, Nissen & Irvin, Beverly Hills, Cal., for plaintiffs.

Herbert M. Ansell, Los Angeles, Cal., for defendant Metal Polishers, Buffers, Platers & Helpers, Internatl. Union, AFL-CIO.

Daniel J. Harrington, Los Angeles, Cal., for defendant NLRB.

MATHES, District Judge.

Plaintiff unions brought this action in equity to compel specific performance of an arbitration award made in their favor pursuant to the provisions of a so-called non-raiding agreement. De-

fendant unions and defendant Regional Director for the National Labor Relations Board (hereinafter "the Board") now move to dismiss for lack of jurisdiction over the subject matter. [Fed.R. Civ.P. rule 12(b) (1), 28 U.S.C.A.]

Stated as briefly as seems practicable, the facts as alleged in plaintiffs' complaint are these. On or about June 9, 1954, plaintiff International Union of Doll & Toy Workers of the United States and Canada, AFL-CIO (hereinafter the "Toy Workers Union"), and defendant Metal Polishers, Buffers, Platers & Helpers International Union, AFL-CIO (hereinafter the "Metal Polisher's Union"), entered into a "non-raiding" agreement, whereby each union agreed, *inter alia*:

"(2) * * * that neither it nor any of its locals will, directly or indirectly, (a) organize or represent or attempt to organize or represent employes as to whom an established bargaining relationship exists with the [other union or its affiliates]; (b) seek to represent, or obtain the right to represent, such employes or to disrupt the established bargaining relationship;

"(5) * * * [to] settle all disputes which may arise in connection with this Agreement in accordance with the following procedure:

"(a) Any union a party hereto which claims that any other union a party hereto (including any local of such a union) * * * has violated the provisions of this Agreement shall immediately notify in writing the representative of the union complained against * * * and the Secretary-Treasurer of the federation with which that union is affiliated * * *.

"(c) In the event the dispute is not settled within 15 days after * * * notification * * * the Secretary-Treasurer of the federations, or their designated representatives, shall meet to attempt to achieve compliance with this Agreement.

"(d) In the event that the authorized representatives of the unions involved are unable to settle the dispute * * * either union or the Secretary-Treasurer of either federation may * * * submit the dispute to the Impartial Umpire herein provided for.

"(e) In any dispute submitted to him * * * the Impartial Umpire shall have jurisdiction only to determine whether the acts complained of constitute a violation of this Agreement * * *.

"(6) The decision of the Impartial Umpire in any case * * * submitted to him under the terms of this Agreement shall be final and binding.

"(7) Each of the parties signatory hereto agrees that, in any case in which it is found that it, or any of its locals, has violated the provisions of this Agreement, it will cease such violation and will not, directly or indirectly during the term of this Agreement, represent or seek to represent the employes involved, and that it will, in addition, take the following remedial action upon request of the complaining union:

"(a) Any petition for representation rights filed with the National Labor Relations Board, or any other appropriate federal or state agency, will be immediately withdrawn.

"(b) Any claims for recognition which may have been submitted to the employer will be withdrawn immediately."

The employees of Cadmium and Nickel Plating Company, (hereinafter the "Company") had as their sole collective bargaining representative plaintiff Local 802 of the Toy Workers Union (hereinafter "Local 802").

On or about February 4, 1959, defendant Local 67 of the Metal Polishers Union (hereinafter "Local 67") filed with the National Labor Relations Board a petition for certification as exclusive bargaining agent for the employees of the

Company then represented by plaintiff Local 802. [See 29 U.S.C.A. § 159.] The Toy Workers Union and its Local 802 thereupon invoked the arbitration procedures provided in the non-raiding agreement.

After a hearing, the Impartial Umpire decided in favor of plaintiff unions, and made the award here sought to be specifically enforced. By this award the Impartial Umpire directed that defendant Local 67's petition for certification be immediately withdrawn from the Board, as provided by above-quoted paragraph (7) (a) of the non-raiding agreement.

Instead of withdrawing the petition, defendant Metal Polishers requested the Board to hold an election to allow the employees of the Company to elect the bargaining representative of their choice pursuant to 29 U.S.C.A. § 159. The Company itself had previously requested the Board to hold an election.

On May 28, 1959, following due notice to all parties concerned, the Board held the requested election. The results were overwhelmingly in favor of defendant Metal Polishers. Out of 71 employees eligible to vote, 53 voted in favor of the Metal Polishers, none at all voted in favor of the Toy Workers, and 13 voted against having any union representative at all.

Plaintiff Toy Workers thereupon commenced this action to compel specific performance of the award made under the provisions of the non-raiding agreement. Defendant Metal Polishers and the Board responded with the pending motions to dismiss for lack of jurisdiction over the subject matter.

█ In approaching any issue as to Federal jurisdiction, it is helpful to recall at the outset that the Federal courts possess only such jurisdiction as has been conferred by statute. [U.S.Const. art. III; Lockerty v. Phillips, 1943, 319 U.S. 182, 187, 63 S.Ct. 1019, 87 L.Ed. 1339.

Here the jurisdiction of this Court is invoked under § 301(a) of the Labor-Management Relations Act of 1947—the Taft-Hartley Act—which provides that:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." [29 U.S.C.A. § 185(a).]

The complaint alleges that both plaintiff and defendant unions are labor organizations, and that the activities of the unions and the industry in which they operate "affect commerce", within the meaning of the Taft-Hartley Act. [See 29 U.S.C.A. §§ 142, 152(5), (6) and (7).]

As authority to sustain district-court jurisdiction over the subject matter at bar, plaintiffs cite United Textile Workers of America, A.F.L.-C.I.O. v. Textile Workers Union, 7 Cir., 1958, 258 F.2d 743, 748–749. There, confronted with essentially the same facts as here (except the Board was not joined as a party and did not participate in the case), the Court of Appeals for the Seventh Circuit held that § 301(a) confers upon the Federal courts subject-matter jurisdiction specifically to enforce an arbitration award made pursuant to a non-raiding agreement between two unions, even though the award was contrary to a ruling of the Board certifying one of the unions as exclusive bargaining representative.

The rationale of this decision is stated in the opinion as follows:

"We think the [non-raiding] agreement, now on review, is a labor peace treaty enforceable under § 301 by the plaintiff union for its members.

"Certainly the line, 'between any such labor organizations,' embedded in § 301, manifests Congressional recognition of contracts between unions as being the subject of enforcement in federal courts. [Textile

Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972] dispels any doubts about the existence of federal rights under § 301, and we cannot dilute that holding by cutting ground from under the judgment given after litigation between two unions bound under a contract." 258 F.2d at page 748.

Reasoning from the language of § 301 (a) itself, and from the Lincoln Mills decision permitting the District Courts to grant the usual equitable remedy of specific performance in cases where enforcement of arbitiration clauses in collective bargaining agreements is sought, the Seventh Circuit was able to conclude that arbitration clauses in non-raiding agreements between unions were specifically enforceable as well.

It is difficult to differ with a literal reading of § 301(a) as conferring jurisdiction over contract disputes "between any such labor organizations." [29 U.S.C.A. § 185(a).] Indeed the language may be said to be unequivocal. But it seems much less clear that the holding in Lincoln Mills should be applied to cases like that at bar.

Unquestionably the Lincoln Mills decision gives § 301(a) a broad interpretation to confer Federal jurisdiction to decree specific enforcement of arbitration clauses in collective bargaining agreements. 353 U.S. at pages 456, 458, 77 S.Ct. at pages 917, 918; see also: Local 205, United Electrical Radio and Mach. Workers of America v. General Electric Company, 1 Cir., 1956, 233 F.2d 85, 90–91; affirmed 1957, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028; W. L. Mead, Inc. v. International Broth. of Teamsters etc., 1 Cir., 1954, 217 F.2d 6, 8–9; Textile Workers Union of America, (C.I.O.) v. American Thread Co., D.C.Mass. 1953, 113 F.Supp. 137, 139–142; cf.: Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 447, 75 S.Ct. 489, 99 L.Ed. 510; International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 25, A. F. L. v. W. L. Mead, Inc., 1 Cir., 1956, 230 F.2d 576, 581–582.

Along the pathway to that decision, the Court confronted the possibility that such an interpretation of § 301(a) might conflict with provisions of the Norris-LaGuardia Act withdrawing jurisdiction [see 29 U.S.C.A. §§ 101, 104], and declared:

"[W]e see no justification in policy for restricting § 301(a) to damage suits, leaving specific performance of a contract to arbitrate grievance disputes to the inapposite procedural requirements of [the Norris-LaGuardia] Act." 353 U.S. at page 458, 77 S.Ct. at page 918.

Moreover, the Court there further held that § 301(a) does more than merely confer added jurisdiction upon the Federal courts; that in effect § 301(a) declares the substantive law to be applied in suits brought thereunder to be federal law. 353 U.S. at page 456, 77 S.Ct. at page 917.

It seems nonetheless clear, from the opinion itself, that the Court intended in Lincoln Mills to deal solely with collective bargaining contracts. Indeed, the Court appears to regard § 301(a), in providing rights and remedies under collective bargaining agreements, as filling a definite gap in an area not previously covered by federal legislation. 353 U.S. at page 454, 77 S.Ct. at page 916.

For examples of the effect of the decision in Lincoln Mills on later cases involving arbitration provisions in collective bargaining contracts, see: Engineers Ass'n v. Sperry Gyroscope Company, 2 Cir., 1957, 251 F.2d 133, 134–135; Local No. 149 of Am. Federation of Technical Engineers (A.F.L.) v. General Electric Company, 1 Cir., 1957, 250 F.2d 922, 927–930; and Minkoff v. Scranton Frocks, Inc., D.C.S.D.N.Y.1959, 172 F. Supp. 870, 873–874.

In United Textile Workers of America, A.F.L.-C.I.O. v. Textile Workers Union, supra, the Seventh Circuit viewed the holding in Lincoln Mills as "lay[ing] to rest problems of enforcing arbitration

clauses." 258 F.2d at page 749. With due deference to the wisdom and perspicacity of that learned Court, collective bargaining agreements and non-raiding agreements would seem to stand on decidedly different footings, at least in the context of the purposes for which § 301(a) of the Taft-Hartley Act was enacted.

While much of the legislative history of § 301(a) is not too enlightening, such history does reveal that a major purpose of § 301(a) was to provide for meeting problems arising in actions to enforce collective bargaining contracts, since experience had disclosed the difficulties of acquiring in-personam jurisdiction over labor unions in either State or Federal courts, and there was no existing federal legislation in that area of labor-management relations. [See: S.Rep. No. 1177, 79th Cong., 2d Sess. (1947), quoted in Appendix to opinion of Mr. Justice Frankfurter, dissenting, in Textile Workers Union of America v. Lincoln Mills of Alabama, supra, 353 U.S. at pages 493–502, 77 S.Ct. at pages 939–943; H.R.Rep. No. 510, 80th Cong., 1st Sess. (1947), quoted in U.S.Code Congressional Service, 80th Cong., 1st Sess., 1172–1173 (1947).]

■ But no such void in federal legislation existed in the area of regulating the selection of employees' representatives for collective bargaining purposes at the time § 301(a) was enacted. On the contrary, the National Labor Relations Act had granted to the Board jurisdiction to hear the petitions of individual employees or groups of employees, and of employers, to determine questions as to representation. [29 U.S.C.A. § 159 (b) and (c).] And the Act also provided that "[t]he Board is empowered * * * to prevent any person from engaging in any unfair labor practice * * * affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise * * *." [29 U.S.C.A. § 160 (a).]

This grant of jurisdiction to the Board has always been construed broadly [Bethlehem Steel Co. v. New York State L. R. B., 1947, 330 U.S. 767, 775–776, 67 S.Ct. 1026, 91 L.Ed. 1234; Amalgamated Utility Workers v. Consolidated Edison Co., 1940, 309 U.S. 261, 264–265, 267–269, 60 S.Ct. 561, 84 L.Ed. 738], and has been held to confer exclusive jurisdiction in the areas in which the Board has been empowered to act. San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 1959, 359 U.S. 236, 243–248, 79 S.Ct. 773, 3 L.Ed. 2d 775; San Diego Building Trades Council v. Garmon, 1957, 353 U.S. 26, 28–29, 77 S.Ct. 607, 1 L.Ed.2d 618; Guss v. Utah L. R. B., 1957, 353 U.S. 1, 9–12, 77 S.Ct. 598, 1 L.Ed.2d 601; Amalgamated Meat Cutters and Butcher Workmen of North America, Local No. 427, A. F. L. v. Fairlawn Meats, Inc., 1957, 353 U.S. 20, 23–24, 77 S.Ct. 604, 1 L.Ed.2d 613; Garner v. Teamsters, Chauffeurs and Helpers Local Union, etc., 1953, 346 U.S. 485, 488–491, 74 S.Ct. 161, 98 L.Ed. 228; La Crosse Telephone Corp. v. Wisconsin Employment Relations Board, 1949, 336 U.S. 18, 24–27, 69 S.Ct. 379, 93 L.Ed. 463.

Even in cases decided before the enactment of § 301(a), the Federal courts recognized the Board's exclusive jurisdiction, and declined to exercise their own jurisdiction in areas where the Congress had conferred jurisdiction upon the Board. See: National Licorice Co. v. N. L. R. B., 1940, 309 U.S. 350, 365, 60 S.Ct. 569, 84 L.Ed. 799; Fur Workers Union, Local No. 72 v. Fur Workers Union, 1939, 70 App.D.C. 122, 105 F.2d 1, 12–13, 14–16, affirmed 1939, 308 U.S. 522, 60 S.Ct. 292, 84 L.Ed. 443; Blankenship v. Kurfman, 7 Cir., 1938, 96 F.2d 450, 453–454; Lund v. Woodenware Workers Union, D.C.Minn.1937, 19 F. Supp. 607, 609–611.

Since the enactment of § 301(a), inevitably there has been some overlapping of jurisdiction between the Federal courts and the Board, in cases where the basis for an action on a collective bargaining agreement was also an unfair

labor practice under the National Labor Relations Act. [See 29 U.S.C.A. § 158.] In some of these cases jurisdiction has been held to be exclusive with the Board; while in other cases concurrent jurisdiction has been found to exist. Compare United Electrical Radio & Mach. Workers Union of America v. General Electric Company, 1956, 97 U.S.App.D.C. 306, 231 F.2d 259, 261, 262 with United Electrical Radio and Mach. Workers Union v. Worthington Corporation, 1 Cir., 1956, 236 F.2d 364, 367–368 and Textile Workers Union of America, C. I. O. v. Arista Mills Co., 4 Cir., 1951, 193 F.2d 529, 533–534; cf. Local 1976, United Broth. of Carpenters and Joiners of America, A. F. L. v. N. L. R. B., 1958, 357 U.S. 93, 100–101, 105, 108, 78 S.Ct. 1011, 2 L.Ed. 2d 1186.

■ In the case at bar there is presented a kindred problem of possible overlapping jurisdiction between this Court and the Board under § 301(a) of the Taft-Hartley Act and §§ 7, 9 and 10 of the National Labor Relations Act. [See 29 U.S.C.A. §§ 157, 159, and 160.] One possible solution to this problem would be to permit each tribunal to act independently in the area of employee representation. Yet different rules of procedure and evidence in each forum would quite probably lead to different answers being given to the same question. Avoidance of just this type of conflict and confusion was a paramount purpose in the enactment of the National Labor Relations Act and the creation of the Board, as the Court explained in Garner v. Teamsters, Chauffeurs and Helpers Local Union, etc., supra:

> "Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of * * * procedures and attitudes towards labor controversies * * *. A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incom-

patible or conflicting adjudications as are different rules of substantive law." 346 U.S. at pages 490–491, 74 S.Ct. at page 166.

If the better policy is to confer upon a single tribunal jurisdiction over representational disputes, the precise question is which of two Federal tribunals, this Court or the Board, was intended by the Congress to deal with the particular area of the selection of employees' collective bargaining representatives, when both tribunals appear on the face of two applicable statutes to have been granted initial jurisdiction. Implicit in this question is of course the further question whether parties may, by private agreement, in effect by-pass one tribunal in favor of the other.

In United Textile Workers of America, A.F.L.-C.I.O. v. Textile Workers Union, supra, 258 F.2d 743, the Seventh Circuit does not appear to have considered the possible conflict between § 301(a) and the policy expressed in the National Labor Relations Act. 258 F.2d at page 749. The only other reported decision dealing with the jurisdictional question here presented which has come to my attention is Local 2608, Lumber and Sawmill Workers, United Broth. of Carpenters and Joiners, A.F.L.-C.I.O. v. Millmen's Local 1495, United Broth. of Carpenters and Joiners, A.F.L.-C.I.O., D.C.N.D.Cal.1958, 169 F.Supp. 765, where Judge Halbert followed the Seventh Circuit, observing:

> "While I have considerable reservations about the applicability of [§ 301(a)] in the existing circumstances, posing as it does the conflict between employee freedom of choice [29 U.S.C.A. § 157], and what is no more than the parceling out of representational areas among the locals of a union, I feel bound by the decision of the Court of Appeals of the Seventh Circuit in [United Textile Workers of America, A.F.L.-C.I.O. v. Textile Workers Union]." 169 F.Supp. at page 768.

An appropriate approach to the always difficult task of integrating two Federal

statutes is outlined in Local 1976, United Broth. of Carpenters and Joiners of America, A. F. L. v. N. L. R. B., supra, where the Court explained:

"The judicial function is confined to applying what Congress has enacted after ascertaining what it is that Congress has enacted * * *. Because of the infirmities of language and the limited scope of science in legislative drafting, inevitably there enters into the construction of statutes the play of judicial judgment within the limits of the relevant legislative materials. Most relevant, of course, is the very language in which Congress has expressed its policy and from which the Court must extract the meaning most appropriate." 357 U.S. at page 100, 78 S.Ct. at page 1016.

When the two Acts at bar are compared, it is clear that district-court jurisdiction under § 301(a) must be found, if at all, from the words "between any such labor organizations." [29 U.S.C.A. § 185(a).] But no mention is there made of the type of inter-union contracts over which the District courts may exercise jurisdiction. On the other hand, §§ 7, 9 and 10 of the National Labor Relations Act [see 29 U.S.C.A. §§ 157, 159, and 160] declare a Congressional policy, developed in detail, whereby the Board is to exercise exclusive jurisdiction in disputes concerning employee representation.

It has never been suggested that § 301(a) impliedly repealed §§ 7 and 9 of the National Labor Relations Act. Cf. Local 205, United Electrical Radio and Mach. Workers of America v. General Electric Company, supra, 233 F.2d at pages 89–90. Moreover, it is to be noted that the Federal courts have traditionally dealt with disputes which involved only the interests of the parties litigant. This is the type of dispute for which courts are designed.

On the other hand, there can be little doubt that the Congress expressly empowered an administrative agency to deal with disputes as to employee representa-, tion, because such matters invariably concern more than the interests of the litigants themselves. The interests of the public, of the industries affected, of the unions affected, as well as the individual employees' right to choose freely their bargaining representatives, all must be considered. An administrative agency, with its flexible procedures, is obviously better able to evaluate all these competing interests, and to determine as well the permissibility of non-raiding agreements in this area, than is a court. [See Meltzer, The Supreme Court, Congress, and State Jurisdiction over Labor Relations II, 59 Col.L.Rev. 292–301 (1959).]

While my great respect for the learning and acumen of the distinguished Court of Appeals for the Seventh Circuit naturally gives me pause in differing with United Textile Workers of America, A.L.F.-C.I.O. v. Textile Workers Union, supra, the considerations discussed nonetheless impel for me the conclusion that effectuation of the policy of the National Labor Relations Act, in specifically granting jurisdiction to the National Labor Relations Board over representational disputes, restricts ex necessitate the literal meaning of the language in § 301 (a) of the Taft-Hartley Act conferring jurisdiction upon the District courts to enforce agreements "between any such labor organizations." [29 U.S.C.A. § 185(a).]

■ The same considerations impel the further conclusion that the non-raiding agreement between plaintiff and defendant unions in this case cannot be permitted to circumvent the policy of the National Labor Relations Act by ousting or limiting the jurisdiction of the Board. [29 U.S.C.A. § 160(a); see: National Licorice Co. v. N. L. R. B., supra, 309 U.S. at page 365, 60 S.Ct. at page 577; N. L. R. B. v. Walt Disney Productions, 9 Cir., 1944, 146 F.2d 44, 47–49; cf.: Local 1976, United Broth. of Carpenters and Joiners of America, A. F. L. v. N. L. R. B., supra, 357 U.S. at page 105, 78 S.Ct. at page 1019; Amalgamated Utility Workers v. Consolidated Edison

Co., supra, 309 U.S. at pages 264–265, 267–269, 60 S.Ct. at pages 563, 564, 565.]

Accordingly, defendants' motions to dismiss this action for lack of jurisdiction over the subject matter must be granted. This dismissal shall not of course operate as an adjudication upon the merits. [Fed.R.Civ.P. rule 41(b).]