**LOCAL 33, INTERNATIONAL HOD CARRIERS BUILDING AND COMMON LABORERS' UNION OF AMERICA, Plaintiff,**

v.

**MASON TENDERS DISTRICT COUNCIL OF GREATER NEW YORK and Local 23, International Hod Carriers Building and Common Laborers' Union of America, Defendants.**

United States District Court
S. D. New York.
July 14, 1960.

738

O'Dwyer & Bernstein, New York City, for plaintiff (Paul O'Dwyer and Howard N. Meyer, New York City, of counsel).

Delson, Levin & Gordon, New York City, for defendant Mason Tenders District Council (Ernest Fleischman and

Aaron Weissman, New York City, of counsel).

Giuffre & Minkin, New York City, for defendant Local 23 (Helen Minkin, New York City, of counsel).

RYAN, Chief Judge.

Following an adverse decision by defendant Mason Tenders District Council and while an appeal to the General Executive Board of the International was pending, plaintiff filed this suit for a declaratory judgment and an injunction under Section 185, Title 29 U.S.C.A., § 301, Taft-Hartley Act; the Labor Management Reporting and Disclosure Act of 1959, Public Law 86–257, 29 U.S.C.A. § 401 et seq. and Sections 1331, 2201 and 2202, Title 28 U.S.C.

The complaint alleges that plaintiff Local 33 is a local labor union in the building trade in the Counties of Bronx and New York, and that it, defendant Local 23 and three other locals in the same craft and counties are affiliated with and constitute the defendant Mason Tenders District Council, a labor organization under the Constitution of the International Hod Carriers Building and Common Laborers' Union of America, which represents its members in negotiating with employers. The complaint further alleges that there is a custom and practice among the five locals that the particular local to which the first two men on a construction job belong has jurisdiction over such job and that this was so provided in the collective bargaining agreement between District Council representing the locals and employer, as well as an agreement that all disputes over this custom are to be determined by the Council. It is then alleged that on the Zeckendorf Hotel construction job, located at 33 West 51 Street, New York City, the first two men on were Local 33 men, that although plaintiff had obtained jurisdiction of the job by priority of this employment, defendant Local 23 made claim to it, and that the President of the District Council, motivated by bias and prejudice, awarded the job to Local 23; that at a hearing requested by plaintiff the Coun-

cil, acting in aid of Local 33, reaffirmed the award of the job to defendant Local 33 contrary to the facts and merit of plaintiff's position, that it denied plaintiff the right to have its counsel and stenographer present and that it has prevented plaintiff from prosecuting a timely appeal to the General Executive Board. As a result of the defendant's conduct, plaintiff avers that it will be destroyed and its members deprived of employment. It, therefore, asks that this Court declare that plaintiff, by virtue of the custom and agreement, is entitled to preferment in employment on this site and to a fair administration of this custom by defendant Council, that the President and other biased officials of Defendant Council be declared disqualified to act in such matters, and that defendant local be enjoined from claiming jurisdiction over the job and defendant Council from representing that it has made a determination in favor of defendant against plaintiff.

Plaintiff has moved for summary judgment or, in the alternative, for a temporary injunction, urging that it has exhausted all remedies available to it within its union organization because its time to appeal from the District Council's decision to the International through no fault or negligence of it has expired, that the Executive Board may not enlarge the time for such appeal, as provided by the Constitution, that there is no fact in dispute and that injunctive relief may issue under Section 301, 29 U.S.C.A. § 185, since this is a suit for violation of contract between two labor organizations as defined by the statute, over which this Court has jurisdiction. Its claim of need for injunctive relief is that, in the near future, substantial mason tenders' work is to begin on the job site.

Both defendants have moved to dismiss the complaint on the ground that the Court lacks jurisdiction because plaintiff has failed to exhaust its remedies within the union. Defendant Council also urges that the suit does not fall within Section 301 in that the agreement here sued on is neither a written contract

nor collective bargaining agreement and that the locals are not labor organizations under the statute; that the Labor Act of 1959 cannot apply since the dispute preceded it, that since there is no diversity of citizenship and jurisdictional amount or federal question the suit may not be maintained either under Sections 1331 or 2201 and 2202, and that jurisdiction lies exclusively with the National Labor Relations Board. Defendant Local in addition opposes plaintiff's motion on the ground that there are numerous questions of fact concerning the custom or practice, that Norris-LaGuardia, 29 U.S. C.A. § 101 et seq. prohibits the granting of an injunction and that in any event plaintiff has not been damaged.

The background leading up to the suit is this:

On September 8, 1959, plaintiff addressed a letter petition to the District Council, relating that an agreement entered into between the District Council and building contractors to run from July, 1957 through June 30, 1960, provided that "where the Mason Tenders are employed on a job, the second man employed shall be a shop steward," [1] that on August 3, 1959, the first two men employed by the Fuller Construction Co. were members of plaintiff local, that in accordance with their practice, plaintiff local's business agents visited the operation and appointed one of these men as shop steward; that subsequently Local 23 claimed the right to appoint the shop steward; and that the President of the District Council, Graziano, had called a meeting of the five locals at which defendant local had presented its claim to the job.

In the petition, plaintiff requested a trial of this grievance and a decision and determination by the Executive Board in accordance with the Constitution of the District Council. Apparently Graziano, purporting to act on behalf of the District Council, had ruled in favor of de-

fendant local and it was from that decision that plaintiff was appealing.

In response, a meeting of the Executive Board was held on September 24, 1959, at which the two locals presented their claims. It was the position of defendant local that it had priority by virtue of the employment of two of its men on the site several years before while repairing the then existing building prior to its demolition at which time it had appointed a shop steward.

On October 13, 1959, the Executive Board met and gave its unanimous decision, holding that since Local 23 had a crew of men at work on the job "site" and had previously designated a shop steward, it was under established historic practice, the local recognized to appoint a shop steward. The decision pointed out that, in order to avoid jurisdictional conflict, the five locals had developed and followed an understanding that whenever men are first employed on a job and a shop steward had been appointed by a particular local, that local retains control on the appointment of shop stewards on all work on that job even though there be an interval of some years between the initial work and subsequent construction an even though contractors may have changed. The Executive Board stated that it realized that the dispute was brought about through unfamiliarity of the plaintiff local's new business agent with past practice, and that such disputes among business agents had to be eliminated in the common interest. In the interests of the Union, the Board in its opinion recommended that the Chairman call together the business representatives of the two locals "for the purpose of assuring harmonious relationship and the elimination of any friction" between them and that it also call the five locals to a joint meeting with the purpose of reducing to writing whatever understanding was agreed upon among them.

On October 16, 1959, Local 33 wrote to the Executive Board of the District

---

1. In fact, the agreement provides: "Where Mason Tenders are employed on a job, the Union shall designate a shop steward who shall be the second man on the job up to the completion of the job."

Council, expressing its disagreement with the decision and requesting the minutes of the trial and the calling of a meeting of the full membership of the District Council in order that they might give their approval or disapproval of the decision. On October 26, 1959, at a special meeting called for that purpose, all the delegates which consisted of representatives of the locals with the exception of only one of plaintiff's three representatives approved the Executive Board's decision.

On November 11, 1959, plaintiff wrote the District Council complaining that it had never been officially notified of the Board's decision and requesting such notification and a copy of the minutes in order that it might take an appeal from the decision. On the same day, it wrote the Secretary of the International, complaining that it had not been notified of the Board's decision and had not received the minutes, and stating "It is our hope and intention that we can be able to press our grievances and obtain justice and satisfaction within the framework of the Constitution and By-Laws of the International Union and the District Council. However, we fear that the tactics which have been used thus far will frustrate us and cause irreparable loss to the members of Local 33."

It appears that a copy of the Board's first decision had been sent to plaintiff on October 14, 1959, and acknowledged by it on October 16, 1959.

On November 23, 1959, plaintiff by letter to the District Council repeated its request for the minutes in order that it might proceed to process its appeal, complaining again that it had never been notified of the decision of the District Council. A copy of this letter was sent to the General Secretary who on December 29, 1959, wrote to plaintiff advising it that its appeal had been set down for January 11, 1960, for a hearing by the General Executive Board, and that it was accepting plaintiff's two letters of November 11 and 23, 1959, as the basis for the appeal and notice thereof and giving plaintiff permission to be represented by counsel and to submit briefs and any further papers and documents it so wished.

On December 31, 1959, the District Council notified plaintiff that, at the request of the Secretary-Treasurer of the International, it had forwarded to Washington a transcript of the minutes of the Trial Board and that copies of all papers were available to plaintiff for inspection at defendant's office.

All this is undisputed as is the fact that at all times prior to the filing of this suit on December 30, 1959, plaintiff intended to and was pursuing and insisting on its remedy of appeal within the Constitution; that it failed to appear at the scheduled hearing of January 11, 1960; that it again failed to appear at the next scheduled date of May 19, 1960, and threatened to restrain the Board if it should decide to proceed with the appeal. The hearing was adjourned sine die and the appeal is still pending before the General Executive Board.

It is plaintiff's argument that since the final decision of the Board was rendered on October 26, 1959, and notification given it on November 19, 1959, its time to appeal expired at the earliest on November 25, 1959 or at the latest on December 18, 1959.

By Article 12 of the International Constitution, all locals are made subject to the Constitution and bound by its provisions. By Article 13, Section 7, the District Council is given jurisdiction, supervision and control of all matters relating to agreements with employers for work within its jurisdiction with the power to discipline its locals for violations within its jurisdiction and compel obedience by them to the International Constitution. By Article 10 of the Constitution of the District Council, grievances and charges are to be brought before the Executive Board which shall act as a Trial Board; and within 30 days from notification of the Council's final decision to whose membership it is submitted, the aggrieved party may take an appeal to the General Executive Board of the International by transmitting a copy

to that body of the charges, the findings and disposition of the Trial Board and such evidence as was submitted before the Trial Board with a request to file additional evidence.

Under Article 13, Section 1, it is provided that neither the District Council nor affiliated locals shall resort to any court in any matter involving a question arising out of their membership until they have first exhausted the remedies provided by the International, the Council's and the Local's Constitutions. To the extent that plaintiff is suing the District Council for official action taken under its Constitution, the dispute may be said to have arisen out of such membership.

The purpose of the District Council is to foster harmony and united action between the affiliated locals and to settle disputes among the members of a family having a common objective and aim.

To begin with, plaintiff has not pursued and completed its remedies as required by Article 10 of the Council's Constitution and attempts to exculpate itself for this failure by arguing that it was prevented from so doing by the Trial Board's refusal to furnish it with a copy of the evidence submitted before the Trial Board. Whether the Board was or was not delinquent in this is unimportant as is plaintiff's further contention that the General Executive Board may not extend the statutory time to file an appeal (and we can see no good reason why it should not have such power) in view of the fact that the Executive Board decided to treat plaintiff's letters of November 11 and November 23, which were sent within 30 days of the final decision, as a notice and basis of an appeal and which antedate the dates fixed by plaintiff as ending the time to appeal. Since the final decision of the Council was not reached until October 26, 1959, when the membership voted—the appeal was certainly timely—if not premature. This is especially so, as plaintiff pointed out in its letter of November 11, 1959, if it had never been officially notified, for it is from the date of such notification that the 30 days start to run under Article 10, Section 6, of the Constitution.

 On this ground alone, assuming jurisdiction over the subject matter under any of the statutes pleaded, we would be warranted in the exercise of our discretion in dismissing the complaint as not presenting a controversy ripe for declaratory judgment. Plaintiff agreed when it became affiliated with the Council to be bound by the Constitutional requirement that it appeal its grievances within the organization; that remedy is available to it and it is "plain, speedy and adequate" (Born v. Cease, D.C., 101 F.Supp. 473, 475; Born v. Laube, 9 Cir., 213 F.2d 407; not contrary to "natural justice" or to public policy. Blek v. Wilson, 145 Misc. 373, 259 N.Y.S. 443; Bradley v. O'Hare et al., A.D. 1st Dept., 1960, 202 N.Y.S.2d 141). There is no reason to anticipate or suspect that the appeal will be futile because of the prejudice or bias on the part of the Board. If as plaintiff contends, the decision of the District Council was arbitrary and contrary to justice and custom, we must assume that the General Executive Board will adjust the difficulty or dispute in satisfactory fashion. Where there is this possibility (or probability), a Court should not disregard the agreement of the parties and act to give an opinion or declare principles of law on a matter which may be rendered moot by the decision of a more competent body. Local No. 8–6 Oil, Chemical and Atomic Workers v. Missouri, 1960, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373; Anson v. Hiram Walker & Son, 7 Cir., 222 F.2d 100; Reigel v. Harrison, 6 Cir., 157 F.2d 140; Tolsetti v. Local 2026, U. M. W., 46 L.R.R.M. 2389.

 What we have just said is not to be interpreted in any way as a holding that we have jurisdiction but simply that in the exercise of our discretion we would be warranted in withholding equitable relief under Section 2201, 28 U.S.C. (the Declaratory Judgment Act) for lack of a justiciable controversy. Local 2608, Lumber and Sawmill Workers v. Millmen's Local 1495, D.C., 169 F.Supp. 765.

There is no discretion in our decision that the complaint must be dismissed. It is a holding compelled by the fact that there is no controversy *within our jurisdiction* over which a declaratory judgment could be entered assuming justiciability. Strauss v. Teamsters Union, 12/30/59, E.D.Pa., 45 L.R.R.M. 2348; Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194.

While no Section of the Labor Management Reporting & Disclosure Act of 1959 is pleaded as a ground for jurisdiction, plaintiff refers in its briefs to Sections 401 and 705, 29 U.S.C.A. §§ 481, 158. Using the Act as a guide, if not applicable (Cf. National Labor Relations Board v. Drivers, Chauffeurs, Helpers Local Union No. 639, 362 U.S. 274, 80 S.Ct. 706, 4 L.Ed.2d 710. I am unable to find any grant of jurisdiction in either one of those sections to support plaintiff's claim.[2]

There remains the controlling question of whether Congress in enacting Section 301[3] envisioned and intended that a dispute between two sister locals of the same parent and members of the same subordinate Council over an unwritten custom or practice of allocating work areas among the locals was to be decided by a federal court. While under a literal reading of the statute the controversy would seem to fall right in the middle of that part of the statute which permits suits for violation of contracts between labor organizations, the "play of judicial judgment" which must guide us precludes a conclusion that such was the legislative intent. Local 1976, United Brotherhood of Carpenters and Joiners v. National Labor Relations Board, 357 U.S. 93, 100, 78 S.Ct. 1011, 1016, 2 L.Ed.

2d 1186; Juneau Spruce Corp. v. International Longshoremen's and Warehousemen's Union, D.C., 83 F.Supp. 224.

We have no difficulty in finding that plaintiff and defendant Locals as well as District Council are labor organizations within the statute, 29 U.S.C.A. § 152 (Sheet Metal Contractors Ass'n v. Sheet Metal Workers Intern. Ass'n, 9 Cir., 248 F.2d 307; N. L. R. B. v. Metallic Bldg. Co., 5 Cir., 204 F.2d 826; Local 2608, Lumber and Sawmill Workers v. Millmen's Local 1495, supra) or that the unwritten custom and practice constitutes a contract within the statute. Burlesque Artists Association v. American Guild of Variety Artists, D.C.S.D.N.Y. Aug. 14, 1958, 187 F.Supp. 393; Hamilton Foundry & Machine Co. v. International Molders & Foundry Workers Union, 6 Cir., 193 F.2d 209. Although the usual contract sued on between a labor organization and an employer would be a collective bargaining agreement, no such limitation can logically be imported into a contract between two labor organizations. But see: Sun Shipbuilding & Dry Dock Co. v. Industrial Union of Marine & Shipbuilding Works of America, D.C. E.D.Pa.1950, 95 F.Supp. 50. The statute does not even hint at the type of interunion contract it embraces and the legislative history is equally barren on the point.

Although thrown on its resources and its judicial common sense, in helping it to reach a decision the Court does have as a guide the related Local 1976, United Brotherhood of Carpenters and Joiners v. National Labor Relations Board, supra, the National Labor Relations Act, and the excellent opinion of Judge Mathes in International Union of Doll & Toy

---

**2.** Section 401 is a declaration of purpose to protect the rights of employees against labor organizations, and their officials, while Section 705 permits making of certain contracts in the building and construction industry; Section 301 of the Taft-Hartley Act remained unchanged by the new Act.

**3.** Section 301, 29 U.S.C.A. § 185: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Workers of United States and Canada v. Metal Polishers, etc., D.C.S.D.Cal.1960, 180 F.Supp. 280, which as far as we have been able to ascertain is the latest authority on this question. That was a suit between two International Unions to compel specific performance of an award in arbitration under a "no raiding" agreement—a situation parallel enough to ours to be supported by the same reasoning. Judge Mathes while recognizing that standing alone the statute appeared to embrace the dispute, found that the Congressional purpose of maintaining uniformity and stability in industrial relations through the National Labor Relations Act and Board would be nullified by permitting the intervention of courts in matters which, but for the fact that they are embraced by contract, had long been entrusted exclusively to the Board. In support of his persuasive conclusion that Congress had no such purpose in enacting Section 301, the Judge pointed to the fact that while the Act was silent on the type of interunion contract contemplated, Sections 7, 9 and 10 (29 U.S.C.A. §§ 157, 159 and 160) of the National Labor Relations Act were most explicit in conferring exclusive jurisdiction on the Board in disputes concerning employee representation by Unions and in protecting that jurisdiction from encroachment by any subsequent means that might be established by agreement or law, Sec. 160(a). The necessity for uniformity of decision in the labor field consistently emphasized by the Supreme Court and the effectuation of the legislative policy impelled the Court "ex necessitate" to restrict the literal meaning of the statute and to foreclose that forum to the litigants.

A reading of the few cases interpreting this phrase of Section 301 discloses a uniform reluctance on the part of the Courts to assume the role of labor mediators in this type of dispute. And, where a contrary result was reached, it was thought compelled by the holding in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed. 2d 972, decided in June, 1957, which granted specific performance of a collective bargaining agreement between an *employer* and a *union*. Thus, the Seventh Circuit in a suit for specific performance to compel arbitration of a no raiding agreement between *two International* unions [United Textile Workers of America v. Textile Workers Union of America, 258 F.2d 743 (August 1958)] felt that the statute manifested "Congressional recognition of contracts between unions as being the subject of enforcement in federal courts" (at page 748), and that any doubts that this was so had been dispelled by the Lincoln Mills opinion, which had laid "to rest problems of enforcing arbitration clauses" (at page 749). Looking at the purpose of Section 301 as interpreted by Lincoln Mills to foster industrial peace by resort to Court to enforce agreements so designed, and finding this purpose present in an arbitration clause of a no raiding agreement as well as in that of a collective bargaining agreement, the Court felt that, if statutory purpose was to be fulfilled, it had to assume jurisdiction. This was followed in December, 1958, by the opinion of the Northern District of California (Local 2608 Lumber and Sawmill Workers v. Millmen's Local 1495, supra) where, in a suit between *two locals* of the *same Union* to restrain violation of the contract embodied in the Union Constitution, Judge Halbert reluctantly concluded that the Seventh Circuit opinion compelled the exercise of jurisdiction over such suit, even though the agreement there—a no raiding agreement—differed from the one before him. The Judge expressed the view that while he had "considerable reservations about the applicability of § 185(a) in * * * what is no more than the parceling out of representational areas among the locals of a union", he felt bound by that decision but "would have reached a different conclusion, if the problem were [his] alone to decide" (at page 768). The frustrating effect of these two holdings on Congressional intent and purpose to avoid diversity and conflict of opinion and to foster harmony

in the labor field and stabilize industrial relations by entrusting administration of the nation's labor policy to a centralized administrative agency (San Diego Bldg. Trades Council, Millmen's Union v. Garmon, 359 U.S. 236, 242, 79 S.Ct. 773, 3 L.Ed.2d 775), is dramatically demonstrated by the sequence of events surrounding these two cases. In United Textile Workers, defendant had been certified by the National Labor Relations Board and an election ordered, and in spite of the Umpire's decision in the arbitration that it was in violation of the no raiding agreement, the defendant refused to withdraw its petition and the Board refused to dismiss it. Ignoring the Board's prior jurisdiction and its much greater expertise in the field, the Court directed the defendant to withdraw its petition, thus ousting the Board completely of jurisdiction in an area in which it was far more competent and procedurally better equipped. While the Board then permitted defendant to withdraw its petition, it wrote in effect that it did not acquiesce in the Court's opinion, and that unless it was made a party in a suit of this type it might in the future deny withdrawal of such petition (Personal Products Corp., 122 N.L.R.B., No. 84, 12/18/58). Assuming that there was concurrent overlapping jurisdiction in these two tribunals, there was undesirable, direct conflict in their policy—the Court enforcing the representation agreement and the Board ignoring it as contrary to Section 7 of the Taft-Hartley Act (29 U.S.C.A. § 157).

Because of the stress by the Supreme Court on the importance of uniformity in the administration of labor laws (assuming that Lincoln Mills and the statute go so far as to justify a holding of jurisdiction in this type of case), the Court should have deferred to the Board's policy, we think. In Judge Halbert's case, had he found that plaintiff had exhausted its administrative remedies and issued the injunction, the situation would have been no better, for there the defendant had not only been certified but elected and was about to be certified by the Board as the exclusive bargaining agent of the employees. While we cannot agree with the holding of the Court in Sun Shipbuilding & Dry Dock Co. v. Industrial Union, supra, that Section 301 is limited to collective bargaining agreements, we do agree with its conclusion that Section 301 was not intended to give the Court jurisdiction over "a family squabble" between two groups of what is the same labor organization concerning the rights "of various members of the same family and no one else." (95 F.Supp. at page 53).

Whether the parties were the same or separate labor organizations was the point expressly left open by Judge Cashin for determination on the trial in Burlesque Artists, supra. And then finally there is the Metal Polishers case, supra, where, in spite of the fact that the suit was between *two separate International* unions for specific performance of an arbitration award, Judge Mathes refused to extend the Lincoln Mills holding on the ground that there was a vast difference between a collective bargaining and a no raiding agreement, for the reason that while there was prior to Section 301(a) and (b) no remedy by an employer against a union to enforce the first type of agreement, the Board had always had the power to settle interunion no raiding disputes and there was, therefore, no need to extend the jurisdiction of the Court to this latter type of suit. That Lincoln Mills was to be severely restricted in its application was also the opinion of Chief Judge Clark when such an extension would work a conflict with the earlier Norris-LaGuardia Act, 29 U.S.C.A. § 104. A. H. Bull SS Co. v. Seafarers' International Union, 2 Cir., 1957, 250 F.2d 326. See also comments in 59 Col.L.Rev., p. 202, and 59 Yale L.J. 299.)

Whether Congress had in mind conferring jurisdiction in the courts over a violation of contract only between *two separate Internationals* as in Textile Workers, 7th Circuit (and even this seems doubtful in view of the unfortunate effects of this holding) or whether the Metal Polishers decision more closely

approaches its intent is a question to which we will have to await the answer, for at present we are at a loss to know what type of interunion contract it did contemplate submitting to the federal courts.

From what we do know of legislative intent in this area and from the fact that Congress created a centralized agency with broad exclusive powers armed with its own procedures to adjust just this type of representational or work assignment dispute (10k, 29 U.S.C.A. § 160(k), 29 U.S.C.A. § 158(b) (4) (d)) involving as it does public interest and the interest of an important and widespread industry and the balancing of which requires specialized knowledge and cumulative experience of the industry, a custom and the standards of its application, we do conclude that it was not its intent to throw the federal courts into the skirmish and have them come up with varying opinions.[4]

As pointed by Mr. Justice Frankfurter in San Diego Bldg. Trades Council, Millmen's Union v. Garmon, supra, many of the problems flowing from the enactment of Taft-Hartley "could not have been, at all events were not, foreseen by the Congress. Others were only dimly perceived and their precise scope only vaguely defined." 359 U.S. at page 240, 79 S.Ct. at page 777. If legislative history is any indication, the particular problem does not appear to have been even dimly perceived.

A glance at the relief requested by plaintiff that the Court direct fair and impartial treatment of the child at the hands of its parent and sister and that members of this family be stripped of their authority to reach a decision in this squabble, points up dramatically the futility and incompetence of this Court's intervention in such a dispute.

We conclude that defendants' motions must be granted for failure to state a

claim under Section 185, 29 U.S.C.A., or Sections 1331 and 2201, 28 U.S.C. and the complaint is dismissed.

Settle order.

---

4. While there is not at the present moment any conflict with the Board over this dispute, a charge of an unfair labor practice can overnight put the matter into that tribunal's hands, and we would then have the multiplicity of tribunals and diversity of procedures which Garner v. Teamsters, Chauffeurs and Helpers Local Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 warned against.