**LOCAL 33, INTERNATIONAL HOD CARRIERS BUILDING AND COMMON LABORERS' UNION OF AMERICA, Plaintiff-Appellant,**

v.

**MASON TENDERS DISTRICT COUNCIL OF GREATER NEW YORK and Local 23, International Hod Carriers Building and Common Laborers' Union of America, Defendants-Appellees.**
**No. 315, Docket 26677.**

United States Court of Appeals
Second Circuit.

Argued April 11, 1961.

Decided June 8, 1961.

Howard N. Meyer, New York City (Paul O'Dwyer and O'Dwyer & Bernstien, New York City, on the brief), for plaintiff-appellant.

Ernest Fleischman, New York City (Aaron Weissman and Delson, Levin & Gordon, New York City, on the brief), for defendant-appellee, Mason Tenders Dist. Council of Greater New York.

Helen Minkin, New York City (Giuffre & Minkin, New York City, on the brief), for defendant-appellee, Local 23, International Hod Carriers Building and Common Laborers' Union of America.

Before CLARK, MEDINA and FRIENDLY, Circuit Judges.

MEDINA, Circuit Judge.

On a series of motions and cross-motions that we shall later describe in some detail the District Court has dismissed the complaint of Local 33, International Hod Carriers Building and Common Laborers' Union of America for failure to state a claim upon which relief can be granted under Section 301 (a) of the Labor-Management Relations Act, 29 U.S.C.A. § 185(a), and Local 33 appeals. Chief Judge Ryan's opinion is reported at 186 F.Supp. 737. The action is one for a declaratory judgment and for injunctive relief, based upon an alleged "agreement, custom and practice" concerning the assignment or allocation of work by Mason Tenders on building construction in the City of New York. While, as will later appear, we have decided that there was no such "agreement, custom or practice" as is alleged, and that summary judgment for appellees should have been granted for this reason, and also because the record clearly discloses that Local 33 had not exhausted its contractual administrative remedies within the framework of the Constitutions of the Unions, there is necessarily involved *in limine* the question of the jurisdiction of the District Court to consider the case under Section 301(a) of the Labor-Management Relations Act, 29 U.S.C.A. § 185(a).

The dispute itself is simple enough. There was an old hotel at 33 West 51st Street, in New York City. Because the condition of a parapet on the roof of the hotel had become a source of danger it was repaired, and some Mason Tenders, members of defendant Local 23 of the International Hod Carriers Building and Common Laborers' Union of America, were employed by Turner Construction Company for a few days in December, 1956, repairing the parapet. The business agent of Local 23 promptly appointed a shop steward and, as required by the Union rules, he notified the defendant Mason Tenders District Council of Greater New York. In the course of time the hotel was torn down and the land on which it stood was used for a time as a parking space for automobiles. In 1959 the construction of the new Zeckendorf Hotel, as it was called, was commenced on a large parcel, which included the site of the hotel that had been demolished. The work began on August 3, 1959 and the first two Mason Tenders to be employed by the contractor, Fuller Construction Company, were Richard Fitzsimmons and Patrick Kelly, members of Local 33. The business agent of Local 33 at once appointed Patrick Kelly "as shop steward for this construction job" and sent the customary notification to the District Council. Shortly thereafter Local 23 claimed to be entitled to designate the shop steward because of the repairs in 1956 to the parapet on the roof of the old hotel, on part of the Zeckendorf Hotel job site. Each of the two locals rested its claim upon a so-called custom or practice that is said to have been recognized by the Mason Tenders in New York City for many years.

The Hod Carriers Building and Common Laborers' Union consists of several separate but affiliated labor organizations formed in accordance with a more or less common type of system or plan. In the New York metropolitan territory there are five Locals of Mason Tenders, including Local 23 and Local 33. Next higher up is the Mason Tenders District Council of Greater New York. At the top is the International. Each of these Unions is a separate entity, but each is contractually bound to the others by the terms of their respective Constitutions, especially the Constitution of the International. The District Council is given jurisdiction, supervision and control of all matters relating to agreements with employers in the City of New York, with power to discipline its Locals for violations and compel obedience by them to the Constitution of the International. Elaborate and detailed procedures are prescribed for the processing of grievances, such as is the basis of the claim of Local 33 in this case, and under Article 13, Section 1 of the Constitution

of the International, it is provided that neither the District Council nor any of the affiliated Locals shall resort to a court in any matter involving a question arising out of their membership until they have first exhausted the remedies provided by the respective Constitutions of the International, the District Council and the Local. All these documents are in the record before us here. The first step was an appeal by Local 33 to the administrative head of the District Council and he promptly ruled in favor of Local 23.

The Collective Bargaining Agreement between the Building Contractors Employers Association, Inc. and the District Council, effective from July 1, 1957 to June 30, 1960 merely provided in Article VII, Section 1: "Where Mason Tenders are employed on a job, the Union shall designate a shop steward who shall be the second man on the job up to the completion of the job." There was no strike, no coercion or pressure of any kind brought to bear on the employer or upon anyone else. Local 33's shop steward was out and Local 23's was in.

Thereafter, on September 8, 1959, and in accordance with the procedure prescribed in the Constitutions, Local 33 filed a grievance with the District Council. The Executive Board, after a hearing, decided in favor of Local 23, and Local 33 was informed of this decision by letter of October 14, 1959. This action was confirmed by vote of the entire District Council, including the other affiliated Locals, having the same standing in the framework of the Unions as Locals 23 and 33, and a letter notifying Local 33 of this action was sent on November 19, 1959.

In the meantime counsel for Local 33 had been diligently dictating letters. Complaint was made that Local 33 had not been afforded at the hearings or meetings the opportunity of counsel and the right to its own stenographer, although we find nothing in any of the Constitutions of the various Unions to indicate that any such right existed, and

it was protested that the failure to deliver a copy of the minutes of the hearing before the Executive Board impaired the right of Local 33 to appeal to the International. There was much dust thrown in the air. We have no way of knowing whether Local 33 and its advisers really thought it was being deprived of its right of appeal to the International, or was merely building up an excuse to by-pass the appeal and throw the controversy into the District Court.

On November 23, 1959 Local 33 again requested a copy of the minutes, and a copy of this letter was sent to the International. The whole tenor of Local 33's letters of November 11 and 23, 1959 was to the effect that it intended to appeal to the International. Thus it was quite natural, we think, for the International to inform Local 33 on December 29, 1959 that the International treated Local 33's letters of November 11 and 23 as notices of appeal to the General Executive Board of the International within the 30 days allowed for such an appeal, and the case was put on the January, 1960 calendar. Both Local 33 and the District Council were directed to submit as soon as possible "copies of all papers and documents or other data required by the Constitution in connection with such matters." This, of course, included the minutes about which Local 33 was making such a fuss.

The complaint in this action was filed on December 30, 1959, the defendants were served on January 5, 1960, and Local 33's appeal to the General Executive Board of the International was adjourned because it was thought that it might interfere with the action before the District Court. We think it quite clear that the appeal is still pending and that Local 33 has not exhausted its contractual administrative remedies.

It will also suffice to say by way of preliminary that the papers submitted in support of and in opposition to appellant's motion for summary judgment disclose a welter of miscellaneous charges and counter-charges out of which the

only inference we can draw with reasonable certainty is that there was at no time any agreement whatever such as was claimed by Local 33, or any custom or practice sufficiently definite to be worthy of the name. The critical terms of the so-called "custom and practice" were in a state of flux and we cannot go further than to say that Local 33 had hopes that some agreement on the terms of the "custom and practice" might finally, some day be made.

■■ Thus, if we have power to decide the case, we must direct a dismissal of the case on the merits, because there is no such "agreement, custom and practice" as was claimed. Moreover, summary judgment would also be required because, even if there were such an "agreement, custom and practice," Local 33 has not exhausted its contractual administrative remedies. In order to treat the subject of jurisdiction with any degree of clarity, however, we must now examine the complaint, catalogue the various motions made by the parties, and examine the reasons for the dismissal below, which was not for lack of jurisdiction, or for failure to exhaust administrative remedies, but for failure to state a claim on which relief can be granted under Section 301(a) of the Labor-Management Relations Act, 29 U.S.C.A. § 185(a).

The complaint alleges jurisdiction under Section 301(a); the other legislation cited on the subject of jurisdiction is plainly inapplicable. The parties are alleged to be labor organizations, and the "contract" sued upon is set forth in the following manner:

"Eighth: In order to enable said Locals to secure an equitable distribution among their members of such employment opportunities as might be available in their territorial jurisdiction, the plaintiff, the defendants and other Locals referred to herein agreed:

"(a) By custom and practice, of long standing, that when a new construction job was commenced, the jurisdiction over such job and preference in appointing a shop steward should be vested in the Local to whom the first two men employed on the job belong; and

(b) That all disputes in the interpretation and application of such custom and practice should be objectively and justly determined by the defendant Council."

Reference is made to the Collective Bargaining Agreement and to the exclusion of Local 33 from the so-called Zeckendorf Hotel job. With reference to the grievance procedure pursuant to the provisions of the Constitutions of the respective unions, it is alleged that the District Council "went through the form of a hearing," proceeded to make a decision against Local 33 "contrary to and irrespective of the facts and merits," and then prevented an appeal to the General Executive Board of the International by refusing to furnish Local 33 with a copy of the minutes above referred to.

The relief prayed is a declaration that, "under the agreements in effect, and the custom and practice prevailing in the construction industry in the City of New York," Local 33 had duly appointed a shop steward and that it is entitled to priority of employment on the Zeckendorf Hotel job. Other collateral relief is requested, including an injunction.

The District Council filed three motions: (1) On January 5, 1960, to dismiss the complaint for lack of jurisdiction over subject matter, claiming *inter alia* that the complaint "does not disclose a cause of action" under Section 301(a); (2) on February 17, 1960, to dismiss the complaint for lack of jurisdiction over subject matter, because of failure to exhaust its remedies "within the International Hod Carriers and Common Laborers' Union of America"; (3) on April 5, 1960, again to dismiss the complaint for lack of jurisdiction over subject matter, because the National Labor Relations Act "confers primary jurisdiction over disputes relating to assignments of work to the National Labor Relations Board." In the meantime, on March 1, 1960, Local 23 made a motion to dismiss the com-

plaint for failure to exhaust union remedies and for lack of jurisdiction under Section 301(a); and, on March 14, 1960, Local 33, plaintiff-appellant, moved for summary judgment and for a preliminary injunction. Neither the District Council nor Local 23 made a cross-motion for summary judgment.

By the time Chief Judge Ryan took these motions under advisement the record had grown and grown, until all the pertinent documents and numerous affidavits pro and con had placed before the Court all the proofs necessary to dispose of the case on the merits.

The decision below was to the effect: (1) That there had been a failure to exhaust contractual remedies as required by the Constitutions of the Unions, and that the Court "would be warranted in the exercise of our discretion in dismissing the complaint as not presenting a controversy ripe for declaratory judgment"; and (2) that, although the parties were "labor organizations" and an "unwritten custom and practice constitutes a contract within the statute" [Section 301(a)] the inconveniences attendant upon throwing such controversies into the federal courts were such that it was to be inferred that the Congress did not intend by Section 301(a) to authorize the District Courts to hear and determine "this type of suit." On the basis of this reasoning the complaint was dismissed for failure to state a claim under Section 301(a).

## I

The provisions of Section 301(a) are simple and direct and there appears to be nothing ambiguous about them. The statute reads:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

The parties here are clearly labor organizations within the meaning of Section 301(a), according to the definition of "labor organization" in 29 U.S.C.A. § 152(5), made applicable to Section 301 (a) by 29 U.S.C.A. § 142(3); and there is no dispute over the fact that these "labor organizations" represent employees in an industry affecting commerce as defined in the Act. We say this despite the fact that there is a difference of opinion in the District Courts over whether Section 301(a) is applicable to intra-union disputes. Compare Sun Shipbuilding & Dry-Dock Co. v. Industrial Union, D.C.E.D.Pa.1950, 95 F.Supp. 50; Kriss v. White, D.C.N.D.N.Y.1949, 87 F.Supp. 734; Snoots v. Vejlupek, D.C. N.D.Ohio 1949, 87 F.Supp. 503, with Local 2608, Lumber & Sawmill Workers, etc. v. Millmen's Local, D.C.N.D.Cal.1958, 169 F.Supp. 675; cf. Burlesque Artists Ass'n v. American Guild of Variety Artists, D.C.S.D.N.Y.1958, 187 F.Supp. 393; Local 1104, etc. v. Wagner Elec. Corp., D.C.E.D.Mo.1951, 109 F.Supp. 675. In the absence of some indication to the contrary in the legislative history we think it plain on the face of the statute that the District Courts have jurisdiction where the complaint alleges the violation of a contract between labor organizations representing employees in an industry affecting commerce, as the term "labor organization" is defined in 29 U.S.C.A. § 152(5).

As Section 301(a) confers federal question jurisdiction in the District Courts, Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, we think the District Court gets such jurisdiction upon the commencement of an action in which the complaint discloses a claim by one labor organization against another "for violation of" an alleged contract. The plaintiff may turn out to be "right or wrong," the case may be won or lost on the merits, but the District Court has jurisdiction. See Cunningham v. Erie Railroad Company, 2 Cir., 1959, 266 F.2d

411. See also Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939.

■ Under the Federal Rules of Civil Procedure pleadings are to be liberally construed. F.R.Civ.P., Rule 8(f), 28 U.S.C.A. Beacon Theatres, Inc. v. Westover, 1959, 359 U.S. 500, 506, 79 S.Ct. 948, 3 L.Ed.2d 988; Conley v. Gibson, 1957, 355 U.S. 41, 47, 48, 78 S.Ct. 99, 2 L.Ed.2d 80; Moore's Federal Practice, Vol. 2, pp. 1605, 1711, 2245. We do not see how we can apply a less liberal or more strict rule of construction because the case involves a labor dispute. The fair intendment of the pleading here is to assert the existence of an agreement or contract between the parties, namely a "custom and practice, of long standing" to the terms of which the parties had agreed. Indeed, we do not see how the allegations of the complaint can mean anything else. Perhaps in the field of labor relations, as elsewhere, there may be a host of miscellaneous vague and ill-defined practices and customs that are wholly unenforceable in court. This would seem to be no reason to refuse relief when the proof establishes a practice or custom that is not vague and ill-defined and one that the parties have agreed shall control their conduct. Moreover, we see no basis for construing Section 301(a) as applicable only to collective bargaining agreements, compare Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc., D.C.N.D.Ohio, 1959, 179 F. Supp. 564, affirmed 6 Cir., 1960, 286 F.2d 235, certiorari granted 1961, U.S., 81 S.Ct. 1094; Sun Shipbuilding & Dry-Dock Co. v. Industrial Union, supra, with United Textile Workers, etc. v. Textile Workers Union, 7 Cir., 1958, 258 F.2d 743; Burlesque Artists Ass'n v. American Guild of Variety Artists, supra; Local 2608, Lumber & Sawmill Workers, etc. v. Millmen's Local, supra, or as restricted to written contracts. Cf. Hamilton Foundry & Machine Co. v. International M. & F. Workers, 6 Cir., 1951, 193 F.2d 209, certiorari denied 1952, 343 U.S. 966, 72 S.Ct. 1060, 96 L.Ed. 1363.

## II

■ This brings us to the heart of the case. Despite everything we have just written and despite the plain language of Section 301(a), it is arguable, and it is the principal reason given by Chief Judge Ryan for his decision below, that it was the intention of the Congress, as expressed in the National Labor Relations Act "to avoid diversity and conflict of opinion and to foster harmony in the labor field and stabilize industrial relations by entrusting administration of the nation's labor policy to a centralized administrative agency," 186 F.Supp. at pages 744–745, and that the only body properly equipped to handle this type of controversy is the National Labor Relations Board. Thus reading Section 301 (a) and the various provisions of the National Labor Relations Act together, and exercising a "play of judicial judgment," Chief Judge Ryan concluded it was not the intention of the Congress to give the District Courts jurisdiction over "a family squabble" between two groups of the same labor organization that concerned the "various members of the same family and no one else." Accordingly, he thought the reasoning of Judge Mathes in International Union, etc. v. Metal Polishers, etc. Union, D.C.S.D. Cal.1960, 180 F.Supp. 280, involving a no-raiding agreement between two unions, was analogous and persuasive; and he disagreed with the decision by the Seventh Circuit in United Textile Workers, etc., v. Textile Workers Union, 7 Cir., 1958, 258 F.2d 743, reluctantly followed by Judge Halbert in Local 2608, Lumber & Sawmill Workers, etc. v. Millmen's Local, D.C.N.D.Cal.1958, 169 F.Supp. 765.

If this reasoning is to prevail and the controversy in this case is one within the exclusive power of the National Labor Relations Board to determine, the District Court would lack competence to decide the case on the merits and the dismissal should have been for lack of jurisdiction over subject matter. This was the disposition made by Judge Mathes in the Metal Polishers case, supra, 180

F.Supp. at page 287. See also Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 1955, 348 U.S. 437, 75 S.Ct. 488, 99 L.Ed. 510, affirming a judgment of dismissal for lack of jurisdiction by the Third Circuit, 1954, 210 F.2d 623.

The question is a prickly one and we think it better to face the problem frankly rather than to muddy the waters by deciding the merits and evading the issue of jurisdiction. The plain truth of the matter is that the Congress adopted the clause "or between any such labor organizations," without any realization of the Pandora's box it was thus opening up,[1] and the most diligent examination of the legislative history turns up nothing of real significance that is relevant to the matter under discussion. United Textile Workers, etc. v. Textile Workers Union, supra.

Perhaps it is fair to conclude that where the contract sued upon impinges upon some clearly established activities of the NLRB a District Court must step aside or at least stay its hand. The reasons stated by Judge Mathes in the Metal Polishers case are cogent ones, as a no-raiding agreement between unions deals with representation disputes. In such an agreement a union agrees it will not seek to represent employees doing certain work. This may be in direct conflict with the National Labor Relations Act's theory of free employee choice of a representative, see Sections 7 and 9 [29 U.S.C.A. §§ 157, 159], and the conflicts with the NLRB reflected in the Textile Workers and Lumber & Sawmill Workers cases above cited are certainly to be avoided if possible. But we decide

nothing as to no-raiding agreements, as none such are before us now.

What we do have before us is a work assignment dispute between Local 33 and Local 23 as to which local has the right to designate the shop steward on a particular job. The significant provisions of the National Labor Relations Act dealing with the role of the NLRB in work assignment disputes are to be found in Sections 8(b) (4) (D) and 10(k) of the Act. 29 U.S.C.A. §§ 158(b) (4) (D), 160(k). Including subdivision (ii) of Section 8(b) (4) (D), added to the section by amendment in 1959, 73 Stat. 542, Section 8(b) (4) (D) in pertinent part reads:

"(b) It shall be an unfair labor practice for a labor organization or its agents— * * *

"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is— * *

"(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organiza-

---

1. The clause was added to Section 301(a) late in its history by the Conference Committee. There is no indication in either the Conference Report or in the post-conference debates as to exactly what was intended to be accomplished by this addition. The only reference to it is contained in a summary of the principal differences between the bill passed by the Senate and the bill which came out of conference, prepared by Senator Taft and inserted in the Congressional Record. In this summary it was merely stated that "Section 301 differs from the Senate bill in two respects. Subsection (a) provides that suits for violation of contracts between labor organizations, as well as between a labor organization and an employer, may be brought in the Federal Courts. * * *" NLRB, Legislative History of the Labor Management Relations Act, 1947, Vol. 2, p. 1543; 93 Cong. Rec. 6445.

tion or in another trade, craft, or class * * * "

Section 10(k) provides:

"(k) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (D) of section 158(b) of this title [i. e., Section 8(b) of the Act], the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed."

It is obvious from reading these sections that this statutory scheme does not purport to give the Board general supervisory powers over controversies between labor organizations relating to work assignments. The Board may act only when a charge has been filed, and a mere disagreement over work assignments is not enough to create an unfair labor practice. Before a labor organization can be said to have violated Section 8(b) (4) (D), it must have engaged in one of the activities proscribed in Section 8(b) (4) (i) and (ii). Here none of the labor organizations involved have engaged in any of these proscribed activities. There was no strike or threat of a strike, no inducement or encouragement, nor any threat, coercion or restraint upon any employer or anyone else. Local 33 sought only to assert its union rights within the framework of the arrangement among the labor organizations which were parties to the alleged agreement, and by bringing this suit against the District Council and Local 23. The only things here that could conceivably come within the words "to threaten, coerce, or restrain" used in Section 8(b)

(4) (ii) are the acrimonious exchanges between Local 33 and the District Council, growing out of efforts to settle the dispute. Surely, Congress intended something more than this when it used these words.

Under these circumstances, we do not see how the NLRB could have passed on this controversy in any way. Nor is there any basis whatever for the filing of a charge with the NLRB alleging violation of Section 8(b) (4) (D) against any of the parties to this litigation or anyone else.

Moreover, a reading of Section 10(k) of the National Labor Relations Act, 29 U.S.C.A. § 160(k), above cited reveals the emphasis which Congress has placed on voluntary adjustment of work assignment disputes and dispels any notion that uniformity of decision is a paramount consideration in this area, for certainly the results reached in voluntary adjustments such as those in arbitration will not always be the same the Board would have reached if it had heard a particular case. We think to hold that the District Court has no jurisdiction would run counter to the position which Congress has accorded to voluntary adjustments. See Meltzer, The Supreme Court, Congress, and State Jurisdiction over Labor Relations: II, 1959, 59 Colum.L.Rev. 269, 299.

We thus conclude that in a case such as the present one, where there is no likelihood whatever of conflict with the NLRB, there is no basis whatever for holding that the District Court lacks jurisdiction. See Note, 1959, 59 Colum.L. Rev. 202, 204. The fact that plaintiff in its prayer for relief seeks, *inter alia*, a declaration that it is entitled to priority of employment on the job would not be a reason for concluding that the District Court lacked jurisdiction. That such relief would run counter to the policy expressed in Section 8(b) (2) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (2), might only warrant the District Court to deny it in the exercise of its jurisdiction. This we do not decide.

If we were to decide that the District Court lacked jurisdiction, we think we would emasculate Section 301(a) and leave the parties to contracts between labor organizations wholly at the mercy of those who wish to repudiate their bargains without having any valid reason to do so. This is the inevitable result if neither the NLRB nor the courts have power to afford redress. It is difficult for us to see how any such result, in the face of the plain language of Section 301(a), can be beneficial to labor.

### III

■ There remains the question whether there is authority to grant summary judgment for defendants in the absence of a cross-motion for summary judgment. It is Professor Moore's view that such a motion would be a mere formality and is unnecessary in a situation such as we have before us, where the proofs before the court show plaintiff has no case. Moore's Federal Practice, Vol. 6, pp. 2088–9. Although the writer of this opinion expressed a contrary opinion in 1948 as a District Judge, Truncale v. Blumberg, D.C., 8 F.R.D. 492, he is glad to take this occasion to state that he has changed his mind.[2] Especially where there are several motions by the respective parties and the evidence of the facts bearing on the issues arising

out of the complaint is all before the court in affidavit form, it is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have been made had defendant made a cross-motion for summary judgment.

Accordingly, the judgment is affirmed but as a summary judgment for defendants, rather than as a dismissal for failure to state a claim on which relief can be granted. Appellee Local 23's motion to strike certain portions of appellant's appendix is denied.

FRIENDLY, Circuit Judge (concurring).

If the District Court had jurisdiction, I would wholly agree that defendants were entitled to summary judgment because, as is convincingly demonstrated by my brother MEDINA, the papers negated the existence of the alleged custom and practice and also demonstrated failure by plaintiff to exhaust its intra-Union remedies. However, I think the action was properly dismissed for lack of federal jurisdiction, since the complaint, alleging violation of an intra-union "custom and practice, of long standing" as to "preference in appointing a shop steward," did not, in my view, allege a violation of a "contract between labor organizations" within § 301(a) of the Labor-

**2.** What was written in 1948 was:

"While it is my personal preference that the summary judgment rule be made as flexible and expeditious as possible, so that the full potentialities of this procedural device may be realized, I cannot persuade myself that Rule 56 was intended to permit an adjudication on the merits favorable to the party opposing a motion for summary judgment, without a cross-motion. This view is confirmed by the circumstance that this very question of the necessity for a cross-motion received thoughtful consideration by the Advisory Committee at the time of the formulation of the amendments, which took effect in March of this year. The decision by the Advisory Committee that no change should be made, would seem to be a clear indication that such relief should not now be granted in the absence of a cross-motion. After all, there will in most cases be little delay and no

substantial inconvenience if the cross-motion is required.

"Accordingly, I shall hold the papers for an additional two weeks in order that counsel may have an opportunity to make a cross-motion, if they desire to do so." Since then several courts have held a cross-motion for summary judgment not to be necessary, e. g., Hennessey v. Federal Security Adm'r, D.C.D.Conn.1949, 88 F.Supp. 664; American Auto Ins. Co. v. Indemnity Ins. Co. of North America, D.C.E.D.Pa.1952, 108 F.Supp. 221, affirmed 3 Cir., 1956, 228 F.2d 622; Farmers Ins. Exchange v. Allstate Ins. Co., D.C.E.D.Mich.1956, 143 F.Supp. 213, and we are content to follow them. In the new revision of the Federal Rules of Civil Procedure there is reason to hope that there will be some specific provision to the effect that a cross-motion is not required.

Management Relations Act, 29 U.S.C.A. § 185(a). One could hardly find better proof than this case, with its welter of motions and cross-motions, of the undesirability of obliging an overburdened Federal District Court to concern itself with the respective rights of two locals of the same union to appoint a shop steward [1] on a local building project apparently long since abandoned,[2] and of the unlikelihood that Congress meant to do so.

The word "contracts" in § 301(a) of the Labor Relations Act, does not speak to me with the simple and direct accents that it does to my brothers. "Contract" covers a wide area. Some have applied it to government itself. It surprised many to learn that, as used in Art. I, § 10 of the Constitution, it included the "contract" between a state and a corporation embodied in a charter, Trustees of Dartmouth College v. Woodward, 1819, 4 Wheat. 518, 4 L.Ed. 629. Sometimes charters or by-laws of corporations or constitutions of unincorporated associations are regarded as contracts among the members even though the members have never seen them. A promissory note given by one union local to another is surely a "contract between labor organizations," but, equally surely, I would suppose, not one within § 301(a) of the Labor Relations Act, even apart from the constitutional objections that might forbid. Hence the truism that courts will sometimes enforce an intraunion custom or constitution is scarcely a sure sign that this was what Congress had in mind when it enacted § 301(a) or

—more realistically—what Congress would have had in mind if it had focused on the problem.

Although the second clause of § 301(a) did not have the gestation period usual for enactments of that importance,[3] the legislative history of the first clause, summarized in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, and Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, is not without relevance to the interpretation of the second. The impulse behind the first clause was the belief that "When labor organizations make contracts with employers, such organizations should be subject to the same judicial remedies and processes in respect of proceedings involving violations of such contracts as those applicable to all other citizens." 80th Cong. 1st Sess.H.R.Rep. No. 245, p. 46. There was thought to be difficulty in accomplishing this without remedial legislation, especially as regards money judgments, because "At common law voluntary associations are not suable as such," and state statutes altering this rule were neither complete nor uniform, 80th Cong. 1st Sess., Sen.Rep.No. 105, p. 16. Hence § 301(b) provides that "Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States," but that "Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organiza-

1. The significance of this right has not been precisely explained. Although the complaint sought a declaration that members of Local 33 were "entitled to preferment in employment," nothing more was said of this, doubtless because of 29 U.S.C.A. § 158(b) (2). As against this, an affidavit by counsel for the District Council states, in somewhat Delphic fashion, that "the granting of jurisdiction over a job does not preclude the members of other local unions from working on such job."

2. Statements at the argument strongly suggest this action should be dismissed as

moot. It seems to be known as far away as Paris that "the hole destined for the Zeckendorf Hotel" has been sold, Réalités, April 1961, p. 56; perhaps it ought not be too much for a court sitting in New York to "know" this, even without benefit of affidavits calling it to our attention.

3. Indeed, the House of Representatives was not even told that the clause had been inserted by the Conference Committee, 80th Cong., 1st Sess., H.R.Rep. No. 510, p. 65.

tion as an entity and against its assets, and shall not be enforceable against any individual member or his assets." It was believed, however, that this would be insufficient unless the District Courts were given substantive jurisdiction, as well as a new procedural rule—hence the District Courts were given cognizance of suits to enforce contracts between employers and labor organizations. Although the first clause in the bill as enacted did not contain the Senate's language restricting it to "contracts concluded as the result of collective bargaining," it has been held that only such were meant, Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc., D.C.N.D.Ohio 1959, 179 F.Supp. 564, affirmed 6 Cir., 1960, 286 F.2d 235, certiorari granted 1961, U.S., 81 S.Ct. 1094, although, as the same Circuit has held, an unsigned contract may suffice, Hamilton Foundry & Machine Co. v. International M. & F. Workers, 6 Cir., 1951, 193 F.2d 209, certiorari denied 1952, 343 U.S. 966, 72 S.Ct. 1060, 96 L.Ed. 1363.

The clause in § 301(a) with which we are here concerned must be construed in the light of the purpose underlying the entire section, namely, to provide a remedy by suit in the Federal courts in cases where, because of the difficulty in suing labor organizations, other remedies were considered inadequate. That purpose would scarcely include a dispute between locals of the same union normally settled by the union's internal procedures, with ultimate judicial supervision, see Chafee, The Internal Affairs of Associations Not for Profit, 43 Harv.L.Rev. 993 (1930); Congress did not move into the latter area for another dozen years, Labor Management Reporting and Disclosure Act of 1959, §§ 101–105, 304(a), 402, 501(b), 29 U.S.C.A. §§ 411–415, 464 (a), 482, 501(b), see Tomko v. Hilbert, 3 Cir., 1961, 288 F.2d 625. Still less would the purpose include a case such as this where the claimed right is founded on an alleged custom which, even as alleged, is uncertain both in tenor and in term. Although both the locals and the District Council are "labor organizations" as de-

fined in § 2(5), 29 U.S.C.A. § 152(5), in the sense that any one of them could be guilty of an unfair labor practice, it would be undue literalism to say that each must be regarded as a separate entity for purposes of § 301(a) rather than as only an element in a larger one, when the sole complaint is the allegedly erroneous application of a rule or custom established by the latter for its internal governance, or that such a rule or custom is a "contract" within that section. The purpose of the statute to afford a remedy by suit in Federal courts primarily when other remedies were inadequate, its penetration into the periphery of Federal power, the ephemeral character of such controversies as this and the consequent uselessness of any save extremely speedy remedies, the problems of accommodation between the courts and the Labor Board on which my brothers dwell, as well as between § 301(a) and the Norris-LaGuardia Act, 29 U.S.C.A. §§ 101–115, see A. H. Bull Steamship Co. v. Seafarers' International Union, 2 Cir., 1957, 250 F.2d 326, certiorari denied 1958, 355 U.S. 932, 78 S.Ct. 411, 2 L.Ed.2d 414, and, finally, the unlikelihood that, as was said in relation to another issue under § 301(a), Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., supra, 348 U.S. at page 460, 75 S.Ct. at page 500, "Congress, at a time when its attention was directed to congestion in the federal courts, particularly in the heavy industrial areas, intended to open the doors of the federal courts to a potential flood" of intra-union grievances, combine to persuade me that we ought not push the language of the second clause of § 301(a) to its ultimate possible reach but rather should construe it not to cover a dispute between units of the same union arising solely out of a union custom or constitution; I would limit the jurisdictional grant to cases where the plaintiff alleges a text, bargained between itself and another labor organization, of definite content and tenor. The box that Congress opened need not become Pandora's unless courts make it so.