LaSALLE CASUALTY INSURANCE COMPANY, ET AL. *v.* AMERICAN UNDERWRITERS, INC., ET AL.

[No. 1269A257. Filed May 19, 1971. Rehearing denied July 15, 1971.]

*James E. Sandifer, Compton, Clark & Sandifer, John A. Carson,* all of Indianapolis, for appellants.

*Marshall E. Wiillams,* of Indianapolis, for appellee.

WHITE, J.—This is an appeal from a declaratory summary judgment holding that on June 26, 1967, defendant-appellant

---

1. Constitution of Indiana, Article 1, § 20.

John B. Cary (hereinafter "Cary") was not covered by a policy of automobile liability insurance theretofore issued by plaintiff-appellee, American Underwriters, Inc. (hereinafter "American") to Cary. The facts are not in dispute. The sole question we are asked to decide is whether, on the undisputed facts before it, the circuit court correctly answered this question of law raised by the motion for summary judgment: Was Cary effectively deleted from the policy's coverage prior to the date of the accident, June 26, 1967?

On November 15, 1964, Cary's motor vehicle driving privilege was suspended by the State of Indiana by reason of his conviction of the offense of operating a motor vehicle while under the influence of intoxicating liquor. At the expiration of the period of suspension, Cary could not obtain a new driver's license until he obtained a policy of automobile liability insurance and had the coverage certified to the Commissioner of the Bureau of Motor Vehicles on a form SR22. It was necessary that he keep this "SR22 coverage" in effect for a period of three years before he could obtain an ordinary driver's license in the ordinary manner, which is to say, without giving prior proof of financial ability to respond in damages for injury to person or property his driving might cause under circumstances rendering him legally liable.[1]

Cary obtained such coverage from American and while it was still in force (under a renewal policy which had been duly certified to the commissioner on a form SR22) Cary was again convicted of operating under the influence of intoxicating liquor. At the time of this second conviction on June 19, 1967, his driver's license was taken from him by the con-

---

1. These requirements are undisputed and were imposed by IND. STAT. ANN. § 47-2001(5)(2) (Burns 1965). This statute has since been insignificantly amended and in its current form is now to be found under the same section number in the 1970 supplement to Burns unofficial compilation; also in the official compilation, THE INDIANA CODE OF 1971, cited as IC 1971, 9-4-1-54. Throughout this opinion we shall refer to Indiana statutes by their Burns 1965 section numbers, usually without additional designation.

victing court for the purpose of being sent to the Bureau of Motor Vehicles along with the court's recommendation for suspension. Cary then contacted American's agent, Reliable Insurance Agency, Inc. (hereinafter "Reliable"), concerning what effect the latest suspension might have on his insurance coverage. He was told that his policy would probably be cancelled. As an alternative to cancellation, however, Reliable suggested that he might be able to retain his present insurance on his 1967 Chevrolet (the automobile described in his current SR22) by agreeing to a policy endorsement excluding and eliminating coverage when the car was operated by him and providing coverage only when the automobile was driven by his wife, Dixie S. Cary. Cary requested that such change be made and the endorsement so providing was issued to him on June 21, 1967, to be effective as of June 19, 1967, the date of his conviction.

On June 21, 1967, American, through its agent, Reliable, forwarded to the Commissioner of the Bureau of Motor Vehicles of the State of Indiana a form SR26, Notice of Cancellation of the SR22, Indiana Financial Responsibility Insurance Certificate, previously filed on behalf of Cary by American on or about November 1, 1966. By the terms of the SR26, Notice of Cancellation, American gave notice to the Motor Vehicle Bureau that it was cancelling Cary's insurance policy retroactively to June 19, 1967. Said SR26 was then approved by the Motor Vehicle Bureau on June 28, 1967.

On June 26, 1967, being less than ten (10) days after the date of issuance of the aforementioned SR26, Notice of Cancellation, Cary, while operating the same 1967 Chevrolet automobile described in said policy, was involved in an accidental collision with an automobile being operated by defendant-appellant Ritter who claims Cary is responsible and liable for her bodily injury and damages resulting therefrom.

Appellants, who were defendants below, are MARY E. RITTER, the injured party, LASALLE CASUALTY INSUR-

ANCE COMPANY; her liability carrier whose policy contains an uninsured motorist clause obligating it to pay her damages if Cary is uninsured, and Cary.

Appellants contend the attempted cancellation was ineffective because ten days notice was not given to the Commissioner of Motor Vehicles as required by Burns IND. STAT. ANN. § 47-1064, which reads as follows:

"When an insurance carrier has certified a motor vehicle liability policy under this act [§§ 47-1044—47-1086, 47-1088] for the purpose of furnishing evidence of future financial responsibility, it shall give ten [10] days' written notice to the commissioner before cancellation of such policy and the policy shall continue in full force and effect until the date of cancellation specified in such notice or until its expiration, except that such a policy subsequently procured and certified shall on the effective date of its certification, terminate the insurance previously certified with respect to any vehicle designated in both certificates."

The trial court apparently adopted American's contention that while this statute prohibits unilateral cancellation by the company, except on ten days notice to the Commissioner of Motor Vehicles, it does not prohibit cancellation without notice at the request of a driver-insured who has surrendered his driver's license, either voluntarily or under compulsion of a conviction which mandates suspension. The rationale of this interpretation is that since the only logical purpose of requiring ten days notice to the commissioner is to give him an opportunity to terminate the insured's driving privilege, unless substitute proof is filed, notice may thus be dispensed with when the driving privilege has already been terminated by conviction and surrender.

American further contends that § 47-1070 expressly requires the commissioner to cancel the SR22 certificate of insurance upon request (without ten days notice) when the insured surrenders his operator's license. In pertinent part that statute reads:

"The commissioner shall upon request cancel any bond or return any certificate of insurance, or the commissioner shall direct and the state treasurer shall return to the person entitled thereto any money or securities, deposited pursuant to this act [§§ 47-1044—47-1086, 47-1088] as proof of financial responsibility, or waive the requirement of filing proof of financial responsibility in any of the following events:

\* \* \*

"(3) In the event the person who has given proof of financial responsibility surrenders his operator's or chauffeur's license, registration certificates and registration plates to the commissioner, but the commissioner shall not release such proof in the event any action for damages upon a liability referred to in this act is then pending, or any judgment upon any such liability then outstanding and unsatisfied or in the event the commissioner has received notice that such person has within the period of three [3] months immediately preceding been involved as a driver in any motor vehicle accident. An affidavit of the applicant of the nonexistence of such facts shall be sufficient evidence thereof in the absence of evidence to the contrary in the records of the department."

To sustain its contention that it was not necessary for Cary to surrender his registration and registration plates (as well as his operator's license) in order to invoke the provisions of the above quoted § 47-1070(3), American relies on the provisions of § 47-2001(b)(2), as interpreted by the Attorney General of Indiana in 1964 O.A.G. No. 24, p. 115, and on the provisions of § 47-1048(a).

§ 47-2001(b)(2) is the misdemeanor provision of the "drunk-driving" statute which prescribed the penalty to be imposed on conviction and adds:

". . . and the court shall recommend the suspension of the current driving license of the person so convicted for a determinate period of not less than two [2] months nor more than one [1] year and until such person shall give and maintain for a period of three [3] years proof of his financial responsibility in the manner specified in chapter 159 of the Acts of 1947 [§§ 47-1044—47-1088], as amended, and the commissioner of motor vehicles shall thereupon comply with such recommendation, and should the court fail to make such mandatory recommendation, or should the court fail to make

the appropriate mandatory recommendation, the commissioner shall proceed to act in the matter as if such recommendation had been made by the court."

The Attorney General has correctly stated that the Legislature intended "the term 'current driving license' as used in . . . 47-2001(b) (2), quoted *supra,* with reference to suspensions following the conviction for the offence of driving while under the influence, to be applicable to driver's licenses alone and not to registration certificates or plates." (1964 O.A.G. at 118). He also correctly concluded that the law "does not *require* the Bureau of Motor Vehicles or its Commissioner to suspend all registration certificates and plates registered in the name of a person convicted of driving under the influence." (1964 O.A.G. at 118. Our italics.) He says nothing, however, of the Commissioner's discretionary power under § 47-1048(a) which reads:

"Whenever the commissioner under any law of this state suspends or revokes the current driving license upon receiving record of the conviction of such person for any offense under the motor vehicle laws of this state not enumerated under paragraph (b)[2] of this section, the commissioner may also suspend any and all of the registration certificates and registration plates issued for any motor vehicle registered in the name of the person so convicted, excepting that he shall not suspend such evidence of registration, unless otherwise required by law, in the event such person has previously given, or shall immediately give and thereafter maintain for a period of three [3] years, proof of financial responsibility in the future in the manner specified in this section."

American concedes the applicability of the above quoted § 47-1048(a), but says that "since prior to the conviction, Cary had given proof of responsibility and his policy, (as amended to exclude coverage for him) remained in force to cover the

2. Paragraph (b) of § 47-1048 mandates the suspension of all registration certificates and registration plates (in addition to the driving license) of persons convicted of crimes therein specified, not including operating under the influence, the crime of which Cary was twice convicted.

automobile, the commissioner did not have his usual discretionary power to suspend his registration certificates and plates." American ignores the fact that the SR26, notice of cancellation, merely gave notice to the bureau and the commissioner that Cary's policy was *cancelled* retroactively to the date of the second conviction. Appellee calls our attention to no evidence tending to show that notice was given to the commissioner that the policy was continued in force "as amended." Nor does American discuss whether the policy, "as amended", constitutes the proof of future financial responsibility which § 47-1048(a) requires a convicted driver to "maintain" in order to deprive the commissioner of the power to suspend his automobile registration certificates and plates.

If it be assumed that the purported SR26 notice of cancellation was effective at any time, then on the state of the record before the commissioner at the time he received it and presumably also received the convicting court's abstract of the record of the conviction (together with Cary's impounded driver's license), the commissioner then was under the mandatory duty to suspend the driver's license and also under a duty to decide whether to suspend the registration certificate and the registration plate of Cary's 1967 Chevrolet. Since that registration remained subject to the possibility of cancellation (because Cary had failed to maintain proof that he was insured, i.e., "proof of financial responsibility in the future") there was a logical reason for requiring ten days notice of the cancellation of Cary's insurance. Corollarily that same logical reason requires surrender of both registration and driver's license to entitle Cary to release or return of his SR22 certificate of insurance as provided by § 47-1070(3).[3] Neither logic, reason, purpose or apparent legislative intent suggests that these statutes should not be literally interpreted and so administered.

3. § 47-1070 in pertinent part, reads: "The Commissioner shall upon request . . . return any certificate of insurance . . . in any of the following events: . . . (3) In event the person who has given proof of financial responsibility surrenders his operator's or chauffeur's license, registration certificates and registration plates to the commissioner. . . ."

· The pleadings, affidavits and admissions therefore fail to show that American was entitled to judgment as a matter of law.[4]

The trial court erred in granting American's motion for summary judgment and that judgment must be reversed.

The overruling of appellant LaSalle Casualty Insurance Company's motion for summary judgment has not been assigned as error,[5] but the question of whether appellants are entitled to summary judgment in their favor will certainly arise on remand.[6] On the present state of the record, judgment should have been entered for all defendants.

Judgment reversed and cause remanded for further proceedings consistent with the views herein expressed.

Hoffman, C.J., Sharp and Staton, JJ., concur.

NOTE.—Reported in 269 N. E. 2d 563.

---

4. Judgment below was rendered prior to the effective date of the current INDIANA RULES OF CIVIL PROCEDURE. § 2-2524 (Burns 1968) then in effect, provided, as does the present Trial Rule 56(C): "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

5. The judgment entry fails to mention LaSalle's motion, but it was obviously overruled by implication. The transcript of the record was filed December 31, 1969, under the old rules. No motion for new trial or motion to correct errors was required in an appeal from a summary judgment under the old rules. See *Lows* v. *Warfield* (Ind. App. 1970), 259 N.E. 2d 107, 21 Ind. Dec. 654, for the new rule requiring a certified copy of the motion to correct errors in any appeal from a summary judgment.) The assignment of errors inserted in the transcript is that: "The trial court erred in sustaining and granting the motion for summary judgment filed by appellee, American Underwriters, Inc. [etc.]. . . ."

6. New rule TR 56(B) provides, in part: "When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party." Neither the Federal rule 56 (on summary judgment) nor § 2-2524 (Burns 1965), the Indiana predecessor of TR 56, contains an express authorization for granting summary judgment to a non-moving party, but the apparent weight of judicial authority authorizes and encourages it. *International Hod Carriers, Building and Common Laborers' Union* v. *Mason Tenders District Council* (2d Cir. 1961), 291 F.2d 496; *Potomac Ins. Co.* v. *Boles* (S.D. Ind. 1962), 205 F. Supp. 879; 3 Harvey, IND. PRACTICE 544.